PETER SZANTO *503-610-0865*
P.O. Box 4614
Portland OR 97208

# United States Bankruptcy Court

## in and for the District of OREGON

### 1001 SW 5th Av., Portland OR 97204

In Re Peter Szanto, Debtor

=====================

Peter Szanto, Plaintiff

vs.

Evye Szanto, et al,

Defendants

# Adversarial # 16-ap-3114

### core case:16–bk-33185-pcm11

### Plaintiff's Response to Defendants'

### Motion for Summary Judgment

May it please this Honorable Court, comes now plaintiff in opposition to the Summary Judgment (MSJ) Memorandum submitted by the defendants.

Caveat: the documents presented herein are merely a portion of what plaintiff intends to present at trial. Support of the instant presentation will be supplemented if necessary at the hearing of the MSJ. See also plaintiff's declaration.

## A. INTRODUCTION

### *1. The Meaning of Conversion*

Defendants' initial argument (DE 217, p. 9) demands that plaintiff focus on the specific money which he claims was converted.

Such specificity was supplied through the First Amended Complaint (FAC) at ¶¶ 37-38:

16-ap-3114          Response to MSJ Memo – pg. 1

37. After being exonerated Peter Szanto was awarded $250,000 upon various tort, personal injury and negligent custodial supervision claims.

38. Because Peter Szanto was a minor, the $250,000 was given to his parents, Klara Szanto and Paul Szanto, as either: a) a trust for the benefit of Peter Szanto, b) as a bailment for the benefit of Peter Szanto, c) as a guardianship for the benefit of Peter Szanto, d) as a prospective right to real and personal property fully vested in Peter Szanto, e) a representative conservatorship on behalf of a minor, f) some other form of joint adult supervision of the money and property of a minor.

Here, the quantum of money is specified as is the fact that the issue is the tracking, tracing and identification of that original amount through the 50 years from its acquisition by plaintiff / debtor, FAC) at ¶¶ 40-41:

40. With accretions from the original sum, it is now anticipated that the present value of the original $250,000 is in excess of $8 million.

41. All of which, as will be rightfully demonstrated is part of the Bankruptcy estate of the debtor herein.

Thus, contrary to defendants' contention, the money, is specifically stated and identified. As matters of both fact and law, defendants' own citation to *PCO, Inc. v. Christensen* (2007) 150 CA4th 384, 395 specifically identifies the situation, as here, where: "Money cannot be the subject of a cause of action for conversion (when) there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment." accord *McKell v. Washington Mutual* (2006) 142 Cal.App.4th 1457, 1491. This is precisely the identified situation in this action, wherein plaintiff's parents were agents / fiduciaries for plaintiffs. And, wherein the defendants overcame the free will / independence of thinking of plaintiff's fiduciaries so as to create the instant controversy. The money entrusted to plaintiff's agents / fiduciaries was converted, expropriated, and / or placed into a sham trust, inaccessible to plaintiff, so as to thwart plaintiff's acquisition of money which, belongs to, and is rightfully his.

16-ap-3114                    Response to MSJ Memo  – pg. 2

Most testimony and evidence to be introduced at the trial of matter will be by direct presentation. Plaintiff will also present evidence based on the circumstances herein.

> "Circumstantial evidence is not only sufficient, but in most cases it is the only proof that can be adduced. It (i)s not necessary . . . . in order to maintain the issue on their part, to prove by direct and positive evidence, that (a party has) a secret trust or property in the goods. It was sufficient if they proved such facts and circumstances tending to that conclusion as might reasonably induce the (the trier of fact) to believe that he had such trust or property."

*Rea v. Mo.*, (1873) 84 U.S. 532, 543

Specifically, a cause of action for conversion survives summary judgment through allegations of plaintiff's ownership or right to possession of property; defendant's wrongful act toward or disposition of the property, interfering with plaintiff's possession; and damage to plaintiff. *Burlesci v. Petersen* (1998) 68 Cal.App.4th 1062, 1066. Such allegations are made throughout the FAC so as fully to convey the fact that it was the defendants heinous acts which overcame Klara and Paul Szanto's free will, independent rational conduct and ability to understand the nature and consequences of their actions through mental and physical oppression caused by the defendants.

### a. Plaintiff's Proof

Defendants next attempt is to misconstrue the testimony at the deposition of plaintiff. (Said testimony of plaintiff has been altered from what plaintiff actually stated. See plaintiff's supporting declaration.)

Defendants' fabrication of the deposition record was possible, because the defendants employed an unlicensed court reporter. Defendants' unlicensed reporter is not bound by either professional or ethical standards. Plaintiff's extensive inquiry clearly ascertained that the *modus* of fabrication of a phony deposition transcript by an

16-ap-3114　　　　　　　　Response to MSJ Memo – pg. 3

unlicensed court reporter was merely considered clever lawyering on the part of defendants' counsel. How better to produce phony evidence to sustain an MSJ?

This Court's review of the unlicensed reporter issue is limited by the clear mandate of FRCP 28(a)(1) that the "deposition **must** be taken before" (A) an officer authorized to administer oaths either by federal law or by the law in the place of examination; or (B) a person appointed by the court." The reporter was unable to prove her licensure or appointment at the time of the deposition or within the week extension agreed to by the parties. Therefore, this Court's non-discretionary review can only be that the licensure condition precedent to administering and transcribing a deposition as a reporter was not fulfilled. Therefore, as a matter of law, the deposition was improperly conducted and is of no evidentiary value. Inadmissibility of any deposition improperly taken is the correct remedy. *Ott v. Stripe Law Firm* (1996) 169 F.R.D. 380.

Plaintiff has perfected his objections in (DE 223 – EXHIBIT A), as well as an appeal to the 9th Circuit Bankruptcy Appellate Panel as to this issue. Plaintiff renews the objections previously made to the deposition proffered by defendants.

At MSJ p. 10, ¶ starting with the word 'Despite', defendants' allege plaintiff has no evidence of incarceration, or his parents' claims made on his behalf, or that money was ever paid and so on. In fact, plaintiff's testimony is clear in his deposition (EXHIBIT B, Peter's deposition at p.221:21-23): that the evidence requested is with the defendants which they admit to having at [EXHIBIT C. Victor's deposition, p. 123:25 – 124:2] "boxes and boxes and boxes of letters and things like that". [The clear words of this statement are that there are at least six boxes of materials which are purposefully being kept from this Court's consideration thereof.]

The fact of defendants' knowledge, awareness and total comprehension of the significance of plaintiff's incarceration, subsequent exoneration, eventual success in litigation and award based on multiple civil rights abuses, are partly evidenced by the multiple documents which they have admitted are in their possession, either by filing in

16-ap-3114                     Response to MSJ Memo – pg. 4

various actions or through turn over at discovery [EXHIBIT D, an example or some materials which defendants have already produced regarding accusations against plaintiff in 1965.].

As for defendants knowledge and awareness of the facts concerning the plaintiff's claims related to the subject property; they were served with these claims in 2015 [EXHIBIT E] and have defaulted in all required responses thereto.

Specifically then, plaintiff has been candid in his claims and methods of his proof; taking many hours fully to satisfy even the most complex discovery requests as well as defendants' non-compliant, self-imagined, 'request for denials'.

### b. Defendants' Purposeful Withholding of Evidence

However, it is defendants who have been remiss in producing materials and documents in their possession which they are bound to produce. This specifically occurred as to the "boxes and boxes and boxes" (which is at least 6 boxes) revelation. Plaintiff propounded a request for production [EXHIBIT F], but received **NOT EVEN ONE DOCUMENT** [EXHIBIT G].

As a matter of fact, defendants response is outside the bounds of all believability. Defendants reduce the "boxes and boxes and boxes" (which is at least 6 boxes) in [EXHIBIT G] to nothing more than the trite and evasive response of a willingness to confer, (but defendants demand that plaintiff must ask to discuss the issue. But, the only required request was the request for production itself. No further requests were necessary. *Szilvassy v. United States*(1979)82 FRD 752

Thus, the facts and actions of defendants and their counsel demonstrate a clear and mendacious effort to suppress materials which are in their possession. It is inconceivable in logic and reasonable thought that the at least 6 boxes which were represented under penalty of perjury to be filled with material relevant to the outcome of this action -- immediately upon request were averred to be completely useless.

16-ap-3114          Response to MSJ Memo  – pg. 5

Plaintiff contends that what has occurred is spoliation and withholding of evidence by the defendants. This is evident. because what had been a treasure trove – certainly all of materials taken directly from plaintiff's office at the subject property -- which filled at least six boxes – was now completely and totally withheld, not just from plaintiff, but from this Honorable Court !!!!

Withholding of evidence, regardless of whether it was done knowingly, or just expeditiously accomplished, amounts to an absolute and severe fraud upon the court. *Demjanjuk v. Petrovsky* (1993) 10 F.3rd 338.

The proof here is that materials which are available only from Peter Szanto's office make their way into evidence in this case [EXHIBIT D], but when specifically requested through mandatory discovery, plaintiff is shut-out by evasive responses!

"[The] truth-seeking process is corrupted by the withholding of evidence." *United States v. Bagley*, (1985) 473 U.S. 667, 692. Such withholding of evidence and crass FRCP 26. evasion of the duty to disclose, has occurred here. Defendants' MSJ attack castigates plaintiff for not having those very materials which are likely in their possession, but which they have failed to produce through discovery. And which they contend are the very cause for plaintiff's inability to offer the proof of facts alleged.

A reasonable probability exists that withholding of evidence will undermine confidence in the outcome of the trial. *Drumgold v. Callahan*, (2013) 707 F.3d 28, 39. Specifically, defendants, ask this Court to make MSJ decisions while defendants know that the exact materials which would undo their defense are being purposefully withheld.

### 1. *Defendants' Spoliation, Destruction, and Withholding of Evidence to Evade the TRUTH!*

The point, of course, is that defendants' conduct, *modus operandi* and intent fall squarely into the evidentiary construction that, whether by withholding or by outright spoliation or destruction, they are intentionally withholding from this Court materials

which are injurious, and probably fatal, to their case.[1]

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.,* (1999) 167 F.3d 776, 779. In this case, regardless of how named, defendants have purposefully failed to produce materials very essential to a complete understanding of the proof of facts in this case.

Evidence germane "to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." *Kronisch v. United States,* (1998) 150 F.3d 112, 126. This sanction serves a threefold purpose of (1) deterring parties from destroying evidence; (2) placing the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation. *West* (*ibid*)

<u>**Specifically, all of the materials in the "boxes and boxes and boxes" which are denied to plaintiff, can be presumed to be probative of plaintiff's cause.**</u>

A fundamental principle of equitable adjudication is that "a wrongdoer should not profit by his misdeeds." *St. Paul Fire & Marine Ins. Co. v. Cox,* (1985) 752 F.2d 550, 551. This principle of equity should also be this Court's guidance: defendants should not benefit by having deprived (or destroyed) those very documents which can be inferred by implication as being demonstrative of plaintiff's contentions.

---

*1.  Many courts have entered judgment against a party for withholding evidence. (E.G.)  In re Consolidation Coal  (1997) 123 F.3d 126 and Sieck v. Russo, (1989) 869 F.2d 131. This Court should follow such valid examples because there is immense evidence that defendants have purposefully failed to produce and / or destroyed evidence in this matter which would assist this Court.*

## 2. *Defendants' Badgering and Harassment of Plaintiff are Fully Captured in Plaintiff's Deposition*

Defendants contend that the improperly taken deposition, before an unlicensed court reporter tells a tale of: a) lack of evidence that plaintiff's money was used to purchase the subject property; b) no proof that plaintiff's money was used to finance Paul and Klara Szantos' business' expansion; c) failed substantiation of the defendants' torture and extortion of Paul and Klara Szanto; d) a failure by victims Paul and Klara Szanto specifically to identify their molesters and abusers.

Notwithstanding the narrow context in which defendants asked and plaintiff answered the questions upon which these erroneous deductions are based, follow now the errors of logic in defendants' argument.

### a. Plaintiff's Money Used in Purchase of Subject Property

First, and foremost, the documents which plaintiff asserts would prove his allegations were kept at his office at the subject property. As explained previously, access to those records is now denied to plaintiff. This is because plaintiff's office at the subject property was expropriated by the defendants during plaintiff's absence and the documentary proof there from is now under the exclusive control of the defendants.

Defendants' MSJ (p. 10, tenth line from top) assertion that "public records contradict Plaintiff's claim that $100,000 of his money was used to purchase the Baywood Property" is inaccurate on five counts. First, there is no plural records, merely defendants' presentation of a solitary (DE 216, pp.29-34) document denominated as "Agreement for Sale." Second, contrary to defendants representation (DE 218, ¶ 1) the document is not a "purchase agreement," but merely a memorialization of one of many agreements related to the subject property; (this particular version is a contract of sale; terms of which is loss of all money paid if a payment is missed and summary loss

16-ap-3114          Response to MSJ Memo – pg. 8

of possession (DE 216, p. 32, 2nd ¶ from bottom). Third, the signatures of Paul and Klara Szanto are not notarized and the authenticity of those signatures is not validated in any manner. Fourth, the proffered document alone is insufficient to transfer real property in California (CA Civil Code § 1092), because the specific act of granting the subject property is never effected in the agreement. Fifth, the document is merely, as stated, a sales agreement. Fully stated at (DE 216, p. 31, ¶ 3), the delivery of the grant deed is postponed, thus, no transfer is ever effected by the proffered agreement.

Plaintiff will address more fully, at trial, the manner of proof that the subject property was purchased with money belonging to him. However, even the (DE 216, p.34) demonstrates Paul and Klara Szanto's intent to provide for plaintiff when they affirm that the agreement "inure(s) to the benefit of ....the heirs, assigns, beneficiaries . . of the parties hereto." Plaintiff being a beneficiary of money held by his parents for his benefit.

Finally, in 1966 CA Civil Code § 33 (now superceded by Family Code § 6701) prevented minor plaintiff from contracting as to any interest in real property, except as evidenced as the heir, assign or beneficiary of the sales contract.

No contradiction exists. Defendants errant-spin of a mischaracterized document is unsupported by either the words, terms or facts of the document as well as California law relating to sales agreements.

### b. Clear and Extensive Defendant Harassment at the Improper Deposition

There are two clear manners whereby defendants sought to harass plaintiff at the deposition of 6-21-17. First, identified in MSJ, (DE 217, p.10) wherein plaintiff's admission of having only a few documents relating to acquisition of $250,000 in his possession is mischaracterized as "plaintiff does not have any evidence."

16-ap-3114                    Response to MSJ Memo – pg. 9

However, plaintiff made clear at (Deposition, p. 221: 21-23 and p. 226:11-13) and numerous other times (which are purposefully withheld from this Court in the abbreviated record) that the documents which he has in his possession are limited, due to defendants' absconding with records from plaintiff's office at the subject property.

Second, as evidenced by defendants' continuing questioning of matters already asked and answered (Deposition p. 225:20-24, p. 226:9-10, p. 227:3-6, p. 228: 1-4, p. 228:14-17), the effort of repeating questions to elicit alternate answers (or to fill-in alternate answers in the deposition which they controlled) focused on manipulating the altered transcript to infer defects in plaintiff's evidence.

Plaintiff's responses were altered, never proffered for correction (as required by FRCP 30(e)(1), which makes mandatory "on request by the deponent ... before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript ... is available in which: (A) to review the transcript ... (B) if there are changes in form or substance, to sign a statement listing the changes and reasons for making them."

Thus, the deposition record does not reflect the truth clearly expressed by plaintiff at (Deposition 226:11-14): "And I am saying to you that my possession of the documents at the present time is very minimal, because your clients have control over those documents."

### c. Defendants' Efforts to Impeach Plaintiff with Hearsay

Another important defect of defendants' MSJ is its effort to characterize plaintiff's statements as defective, because plaintiff has made no effort to rely on hearsay. Defendants' effort was further harassment at the improper deposition.

Federal Rule of Evidence 802, precludes the admission of statements made outside a current trial or hearing which are offered for their truth, I.E. hearsay is not admissible evidence.

16-ap-3114          Response to MSJ Memo – pg. 10

Nevertheless, defendants seek to impeach plaintiff's testimony based on not statements **not** made to plaintiff by Klara Szanto (Deposition 207:12-13, 213:1-2, 214:24-25, 217:9-11 and 14-16 and 22-23). Specifically defendants strategy (at the bottom of DE 217, p10 and top of 11) seems focused on alleging that because plaintiff's statements do not state any individual as being mentioned by Klara Szanto that voids plaintiff's elder abuse accusations. **However**, had Klara Szanto or plaintiff made any comments directly accusing defendants based solely on statements made to plaintiff by Klara Szanto, those statements would have been inadmissible hearsay; which plaintiff could not submit into evidence.

### d. Defendants' Conclusion is Not Based on Fact

(DE 217, p. 11, middle of the page at "Plaintiff's Depo") attempts to conclude that because defendants have not received evidence which they can conclusively deem probative, that there must not be any such evidence or that plaintiff will not have such evidence or testimony for trial.

Defendants postulate that because plaintiff did not submit to their hearsay trap at explained in the section 'C', that the inferential evidence which plaintiff explained in detail (Deposition 206:24-219:9) and which he intends to supplement with circumstantial trial testimony should – **prematurely** -- be considered insufficient.

Through 13 pages of deposition (IE, further badgering through repeatedly asking the same questions which were already answered) plaintiff explained the logical inferences he was able to make regarding conversations with his mother. Nonetheless, because plaintiff did not rely on hearsay, defendants find his testimony inadequate.

Defendants' reasoning strikes at the heart of MSJ sufficiency: **motions for summary judgment should present legal questions only**. In deciding such motions, the court rules on questions of law only and must not weigh evidence. *Anderson v. Liberty Lobby* (1986) 477 U.S. 242 accord *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* (1986) 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538.

Nonetheless, without attacking the accuracy of defendants' deposition transcription, plaintiff is confident that the nature of his understanding of his mother's difficulties as discussed in the deposition demonstrate that he was making the correct logical inferences about defendants' affect on his mother's mental acuity, physical capacities and over-powering of Klara Szanto's health in her final days.

### e. Proof of Plaintiff's Contentions of Genuine Disputes of Material Fact

Defendants predicate their MSJ on the erroneous notion that because their inquiries did not obtain answers only they themselves deem material; that there is no evidence to substantiate plaintiff's claims. However, such myopic, shortsighted illogic does not indicate that other evidence of plaintiff's allegations is lacking. However, defendants' profess just that (DE 217, p. 11):

> "Because Plaintiff has not produced any evidence to support his allegation that Defendants tortured or extorted Paul or Klara Szanto, all of Plaintiff's claims that are even partially based on such allegations necessarily fail."

Notwithstanding, the fact that the time to present evidence has not arrived, plaintiff demonstrates Klara Szanto's resistance to some of the torture to which she and Paul Szanto were subjected.

### *1. 105 Baywood Avenue, Property Removed from Trust*

It is undisputed that Paul and Klara Szanto signed a trust instrument in 1996 [EXHIBIT H], wherein they themselves act as trustees of their trust. [EXHIBIT I and J] are letters which attest to Paul Szanto's increasing mental infirmity (this issue will be developed further at trial regarding when Paul Szanto's capacity to sign any document ended; evidence will also be introduced as to 1998 litigation regarding this exact issue). Because Paul Szanto and Klara Szanto were concerned about their diminishing abilities to understand and manage their finances, they began the process of handing over day-to-day management of their assets to trustees [EXHIBIT K].

In 2005, Klara Szanto apprised Peter Szanto that enormous psychological and physical pressure, both emotional and physical, was being exerted upon her and Paul Szanto by the defendants regarding property and testamentary intentions. Klara Szanto expressed to Peter Szanto -- who was recuperating in an Israeli hospital, that she feared that Victor Szanto and Anthony Szanto intended to "do something" regarding Peter Szanto's entitlement to ownership of the property 105 Baywood Avenue property.

Peter Szanto instructed Klara Szanto and Paul Szanto to undertake two acts of "<u>independent legal significance</u>" which no amount of malicious intent and evil design on the part of the defendants could undo. *Uniform Probate Code* § 2-515, *United States v Rubier* (1981) 651 F.2d 628.

The plan arrived at was withdrawal of the Baywood Av. property from the Paul and Klara Szanto trusts such that the property was independent of any other testamentary aspect of Paul and Klara Szanto's estate.

During this time, Klara Szanto had explained to Peter Szanto that all of her power to resist Victor and Evye Szanto's intrusions into her private health and life were gone. Klara Szanto stated that there was very little she could do that was not scrutinized and analyzed by plaintiff's siblings.

Peter Szanto advised the following plan of action: **remove the Baywood property from the Trust and make sure the document is signed on a significant date**. Thus, to achieve these two acts of **"independent legal significance"** so as to demonstrate their intent to reaffirm Peter Szanto's interest in the Baywood realty, the property was removed from the trust on Peter Szanto's birthday [EXHIBIT L, the September 3rd signing reflects the time in California when it was already September 4th in Budapest (where plaintiff was born) and September 4th in Israel where plaintiff was then. To emphasize **their absolute intent that the property no longer be in any trust** whereby any of plaintiff's siblings would be enriched, Klara Szanto was encouraged to, and specifically did, write in her own hand the words **"out of trust"** on [EXHIBIT L].

16-ap-3114                     Response to MSJ Memo  – pg. 13

Case 16-03114-pcm    Doc 266    Filed 09/18/17

As the evidence will demonstrate, Paul and Klara Szanto had become wholly humiliated by Victor and Evye Szanto's continuing obfuscation of concepts and terminology related to trusts. As a matter of fact, given Paul and Klara Szanto's level of education, limited grasp of law and imperfect understanding of legal terminology, they were entirely disenchanted with the vehicle of a trust as a testamentary vehicle. For that reason, the words **"<u>out of trust</u>"** were also intended to signal their intent to terminate the trusts which they had previously established.

As will be demonstrated momentarily, Paul and Klara Szanto's effective actions to demonstrate renunciation of trust involvement as to property belonging to Peter Szanto have not been undone in the 12 years since they were effected.

### *3. Statute of Limitations / Defendants Efforts to Revive Trust*

It was not until May 2006 that Victor Szanto realized that he no longer controlled the Baywood property. Victor immediately took steps to recapture the property through the trust he now controlled. [EXHIBIT M, note this document evidences that Paul Szanto has now been transferred to Red Bluff].

The effort to re-establish trustee involvement as to the Baywood property has been resisted by Peter Szanto. The matter is currently before the California Court of Appeal [EXHIBIT N, Appeal A 144586] (the matter has already made one visit to the California Supreme Court, wherein Peter Szanto's right to pursue this action were affirmed [EXHIBIT O].

Specifically, then the reason there is no limitation of act is because Peter Szanto has merely brought to this honorable Bankruptcy Court a matter related to his Bankruptcy estate litigation which was **<u>BEGUN AGAINST HIM BY THE DEFENDANTS</u>** in 2006. There has been NO final decision in that case as demonstrated by the fact that the parties are currently before the California Court of Appeals.

## a. Statute of Limitations Law Also Not Tolled

This case is merely a continuation of the 2006 protection of his rights action by Peter Szanto. However, timely jurisdiction is provided through CA Probate Code § 10382 which allows commencement of probate actions until 3 years after the making of a final accounting by the trustees. ORS 115.005 likewise requires a final accounting to begin any limitations period. Here, the defendants have ~~enjoined~~ ENJOYED their improper control over a trust which terminated in 2006 without ever making a single accounting to the plaintiff. Similarly, ORS 115.005(5)(a) does not affect any limitation of action regarding a proceeding to enforce a mortgage, pledge or other lien upon property of the estate, or to quiet title or reform any instrument with respect to title to property. This action seeks, among other things, to quiet title to the 105 Baywood Avenue property.

## b. Defendants' Efforts to Revive Trust Demonstrates Fiduciary Impropriety

As the previous sections have demonstrated, after 9-3-06, there was no longer any trust as to the Baywood property.

Nevertheless defendants continued their expropriation of plaintiff's property without restraint: [EXHIBIT P, Victor Szanto helping himself to $3 million dollars without concern as to how his 88 year old father will repay the loan]; [ EXHIBIT Q, Anthony Szanto quitclaiming the Baywood property to himself]; [EXHIBIT R, Anthony Szanto alienating the Baywood property].

These actions demonstrate not merely improper fiduciary behavior by the defendants, by failing to make accountings, but also a defiance of the court in the San Mateo County action they commenced [EXHIBIT M].

### 1. Defiance of San Mateo Probate Court's Jurisdiction

Defendants selected the San Mateo Court to adjudicate the parties' dispute [EXHIBIT M]. Thereafter, continuing even now, they have been in contempt of that

16-ap-3114                 Response to MSJ Memo  – pg. 15

jurisdiction by among other things [EXHIBITS P, Q, R] whereby they have alienated the very matters for which they sought relief with neither notice to the court nor leave of the court to alienate the exact items for which they are currently seeking relief.[2]

### 2. Fiduciary Failures; Existence of Fiduciary Relationship

[EXHIBIT K] demonstrates defendants Victor Szanto and Anthony Szantos' appointments as trustees of the Paul and Klara Szanto trust. Those defendants then used their trustee authority in [EXHIBITS M, Q, R] to undertaken trust actions without unanimity of the trustees.

A trust is a fiduciary relationship with respect to property in which the person holding legal title to the property--the trustee--has an equitable obligation to manage the property *for the benefit of another*—the beneficiary. *Moeller v. Superior Court* (1997) 16 Cal. 4th 1124, 1133-4 accord *Estate of Shaw* (1926) 198 Cal. 352, 360; *Askew* v. *Reserve Funding, Ltd.* (1979) 94 Cal. App. 3d 402, 407; Restatement 2d Trusts, § 2.)

The fiduciary duty which these defendants abrogated to plaintiff is complete on the face of [EXHIBIT H] wherein plaintiff is a beneficiary of the Paul and Klara Szanto trust. This is further evidenced in the on-going San Mateo Probate matter, wherein, defendants have never made a single trust accounting since the commencement of that action. OR even when such a formal demand was made of them in 2012, pursuant to the Probate Code. [EXHIBIT S].

Defendants active concealment, fraudulent misrepresentations, self-dealing for financial gain, and direct participation in breach of fiduciary duty are all described in detail. On this basis, the complaint sufficiently states causes of action against them for breach of fiduciary duty and aiding and abetting breach of fiduciary duty. *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* (1998) 68 Cal. App. 4th 445.

---

*2. This Court is well aware of the defendants and their counsels contempt for this Court's jurisdiction by maintaining a parallel action in Nevada as to causes of action which are before this Court..*

### *3. Defendants Effort to Revive Trust*

In October 2005, defendants focused on ousting plaintiff from the testamentary intentions of Paul and Klara Szanto [EXHIBIT T]. This occurred when the defendants realized plaintiff could be summarily ousted from his property, because he was physically incapacitated and would be unable to object. That is, there is no rational basis, other than to oust plaintiff from the testamentary intentions of Paul and Klara Szanto, for the writing of a new trust.

Plaintiff learned of this new maneuver by the defendants from Klara Szanto while still hospitalized in Israel. That is, Klara Szanto telephoned plaintiff, in October 2005 to apprise plaintiff that she was being induced – under pain of food deprivation and the withholding of medical treatment – to sign a new trust which made no distribution to plaintiff [EXHIBIT T, p.10].

Plaintiff's testimony is that it is his personal knowledge from his mother's excited utterances regarding imminent threats against her by the defendants that she was forced to sign the [EXHIBIT T] under threat of physical harm or injury.

## *4. Judicial Estoppel Doctrine is Inapplicable Here*

Defendants mistake plaintiff's factual statements before the Court of Appeal in 2006 for argument. The objective of that appeal was, as now, to present the facts of Paul and Klara Szanto's trust intentions to a trier of fact for adjudication on the merits.

Plaintiff's statements were intended to be factual so as to provide the Court of Appeal with a complete understanding of the issues. More importantly, the Court of Appeal is not a court of first impression. The issues which relate to Peter Szanto's ownership could not be decided in that court in any event, because they had not been raised in the trial court (IE, the issue in the trial court was only whether there was to be a trust contest). However, what was important was that the Court of Appeal understand the then current status of the parties and facts. That is all that plaintiff addressed.

Indeed, had plaintiff not been candid in the Court of Appeal, his factual presentation would have been perceived as lacking credibility due to mis-statements or an incorrect basic understanding of the facts and events. All that plaintiff presented was the facts as they existed in the record at that time.

There was no effort to mislead, merely plaintiff, as always, being forthright in every court in which he appears.

*Specifically, as Ryan Operations v. Santiam-Midwest Lumber  (1996)* 81 F.3d 355, 362, explains **judicial estoppel** applies only when the debtor engages in an effort to obtain 'unfair advantage' and engages in a scheme to mislead the court.

Plaintiff sought no advantage by his statement and did not seek to mislead.

## 5. Evidence of Identity Theft is Based on Reasonable Inferences

Defendants attack on plaintiff's identity theft allegations makes the incorrect statement that plaintiff has "no evidence" (MSJ Memo p.17). Defendants' statement is erroneous, because plaintiff has fully enunciated the *modus operandi* methodology and exemplification for the perpetration of that identity theft.

Plaintiff's evidence relies on the circumstances of the dispute between the parties and the manner whereby defendants were able freely to access plaintiff's office at the 105 Baywood property; and thereby acquire plaintiff's personal identifying information and original driver's licenses, naturalization papers, expired passports so as to thereby create identities for themselves to use in the creation of bank accounts and credit cards in plaintiff's name for defendants exclusive use and enrichment.

The direct evidence shows defendants nearly maniacal focus on altering the testamentary intentions of Paul and Klara Szanto [EXHIBIT T]. Specifically the evidence demonstrates that defendants seek to acquire everything that ever belonged to Paul and Klara Szanto to the complete exclusion of plaintiff.

Thus, the circumstantial script readily proceeds to defendants expropriating everything at the Baywood property to the complete exclusion of plaintiff (irrespective of plaintiff's entitlement or ownership). Thus, having come into the possession of plaintiff's identifying information, governmental identifications and other personal matters, the next step of creating a false identity based on plaintiff was easy. More importantly the facts of the events comports well with the notion that defendants would purposefully steal plaintiff's identity so to confound and drain plaintiff's time-and-financial resources while plaintiff attempts to undo the conversion and testamentary mischief defendants have created.

Ultimately, plaintiff relies on the direct evidence which is available: plaintiff's family, who are the defendants, have been waging war against him since they began litigation [EXHIBIT M] against him in 2006. The difference in testamentary devise when there are four siblings as opposed to three is only 8% (IE, 4 takers receive 25% each, 3 takers receive 33.3% each). Plaintiff contends that such a small amount of increase would not be worth the personal guilt and sin of betraying a brother.

However, when the 8% is coupled with the ability to take everything which plaintiff possessed, the threat of detection, retribution or the all-mighty's holy rancor can be rationalized away (I.E., defendants said to themselves: a relationship with my brother is worthless compared to the money I get from taking everything he has).

> "The illegal action must be inferred from the facts shown at trial. Inferred factual conclusions based on circumstantial evidence are permitted only when, and to the extent that, human experience indicates a probability that certain consequences can and do follow from the basic circumstantial facts. The inferences that the court permits the jury to deduce in a courtroom do not differ significantly from inferences that rational beings reach daily in informally accepting a probability or arriving at a conclusion when presented with some hard, or basic evidence. A court permits the jury to draw inferences because of this shared experience in human endeavors."

*Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, (1980) 637 F.2d 105, 116

For these reasons, the demonstration of defendants culpability towards plaintiff is readily apparent from the direct evidence as well as the circumstantial evidence of the facts and events between the parties.

Additionally, the defendants should not obtain any benefit from their failures to produce documents or evasiveness and non-responsiveness at their depositions or what in all-likelihood is their spoliation and destruction of admissible evidence.

## B. Plaintiff's Liability on Second Counterclaim

Defendants' second counter claim is an action for "Wrongful Initiation of Civil Proceedings." That claim fails for at least five independent reasons.

**First**, "(a) plaintiff who asserts a claim for that tort must plead and prove the following elements: (1) The commencement and prosecution by the defendant of a judicial proceeding against the plaintiff; (2) The termination of the proceeding in the plaintiff's favor; (3) The absence of probable cause to prosecute the action; (4) The existence of malice, or as is sometimes stated, the existence of a primary purpose other than that of securing an adjudication of the claim; and (5) Damages." *Checkley v. Boyd*, (2000) 170 Ore. App. 721, 734-5.

(DE 66), the counterclaim – did not plead the termination of any proceeding in defendants' favor. (DE 66) did not plead malice. (DE 66) did not plead that plaintiff lacked probable cause in his claims.

**Second**, defendants have already prevailed as to their identical (DE 66) claims in the Nevada state court where the presiding judge is their close personal friend and periodic houseguest. Thus, defendants have already prevailed on their (DE66) identical claims in another court, thus there is a jurisdictional bar to this Court granting the same relief *United States v. Tohono Nation* (2011) 563 US 307.

**Third**, this Court failed to protect its jurisdiction from the Nevada court taking jurisdiction over the parties and issues as requested by plaintiff in (DE 187) when this Court denied the Writ request which would have preserved its jurisdiction (DE 189). Therefore, this Court does not have jurisdiction to consider a matter which the defendants have brought to final determination in another court.

**Fourth**, other than stating the word malice, just once, as part of a citation, defendants have never alleged malice in (DE 66). Neither have they argued any basis to infer nor demonstrated any malice on the part of plaintiff.

**Fifth**, other than the conclusory "The evidence submitted herewith demonstrates that the first four elements have been satisfied," (DE 217) there is no affirmative demonstration of which evidence proves what.

Thereon, the MSJ on the counterclaim fails in its entirety.

# C. Conclusion

The essential metric in MSJ decisions is whether a litigant will be deprived of an opportunity to present proof. *Tunstall v. B'hood of Loco. Firemen* (1946) 69F.Supp 826. In this case, the defendants have focused on: a) discovery abuse through evasion, hiding and spoliation of evidence; b) pursuing a separate action in Nevada based on personal friendship with their local judge. Through both these strategies defendants have been able to thwart plaintiff's efforts to present direct evidence. Thereupon, plaintiff necessarily relies on circumstantial evidence to prove his claims:

> "[it] is true that the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."

*First Nat'l Bank v. Cities Serv. Co.*, (1968) 391 U.S. 253, 288-9

In their presentation, defendants have focused on nothing other than their own failures to elicit the evidence they believe would prove plaintiff's claims against them. In that regard they have erred by presumptuously believing they are in some position to pre-ordain what the Court's decision metric will be. Likewise, defendants have failed to recognize that the circumstances of the dispute between the parties speaks volumes as to the motivations of the defendants.

Both the circumstantial evidence which demonstrates defendants actual undertaking of a strategy to deprive plaintiff of his money and property, as well as the direct evidence whereby defendants have resisted the production of, and likely have, destroyed evidence emphatically demonstrate that there are genuine disputes of material fact in this case.

Respectfully,

DATED <u>18 Sept. 2017</u>      /S/ _____ Peter Szanto

## **Proof of Service**

My name is Jakkob Szanto, I am over 20 years of age and not a party to the within action. My business address is PO Box 4614, Portland OR 97208. On the date indicated below, I personally served the within:

## **Response to Defendants' Motion for Summary Judgment Brief**

by e-mail to Mr. Olsen and Mr. Henderson at:

nhenderson@portlaw.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed at Portland OR.

Dated 9-18-2017 ___/s/_____ _Jakkob Szanto_