PETER SZANTO *949-887-2369*
11 Shore Pine
Newport Beach CA 92657

US BANKRUPTCY
DISTRICT OF OREGON

2018 MAY -1 AM 11: 31

$181.00
PAID DOCKETED



# United States Bankruptcy Court

## in and for the District of OREGON

### 1001 SW 5th Av., Portland OR 97204

| | |
|---|---|
| **In Re Peter Szanto** | # Adversarial # 16-ap-3114 |
| **Debtor** | ## core case:16–bk-33185-pcm7 |
| ===================== | **Plaintiff's Notice of Motion and Motion Seeking Bankruptcy Judge's Recommendation for Withdrawal of District Court Referral to Bankruptcy Division for Further Proceedings in the United States District Court** |
| Peter Szanto, Plaintiff | |
| **vs.** | |
| Evye Szanto, et al, Defendants | *(This Application Does Not Waive California District Court's Jurisdiction over this Matter)* |

**$181 US Postal Money Order is attached hereto.**

16-bk-33185          Withdraw Reference – pg. 1

## 1. Plaintiff's Certification Relating to Pre-filing Conferral (Certification Pursuant to LBR 7007-1(a))

Plaintiff telephoned Adversarial Proceeding defendants' counsel Mr. Henderson on 3-20-2018 to discuss the matters presented herein. The call went to voice mail. To Mr. Henderson's voice mail, plaintiff requested a return call, to discuss the matters herein.

As of the signing of the instant paper, debtor has received no further communication from Mr. Henderson regarding this application.

Thus, pursuant to rule, debtor has diligently sought conferral so as to resolve the situation, but has been unsuccessful in that regard. Very specifically, after 41 days of waiting to discuss the significant matters herein; the opposition simply could not be bothered with communicating with plaintiff.

I certify under penalty of perjury under the laws of the United States, that foregoing is true and correct. Signed at Lido CA.

DATED 4-30-2018 _____/s/_____ Peter Szanto

16-bk-33185          Withdraw Reference  – pg. 2

## 2. Introduction

May it please this Honorable Bankruptcy Court, comes now debtor, Peter Szanto, praying that this Court recommend to the U.S. District Court in and for the District of Oregon that the Bankruptcy Referral in this adversarial proceeding be withdrawn such that the matters enumerated below may proceed in the U.S. District Court.

Debtor's contention is that the Bankruptcy reference has already ended and that a parallel case is already proceeding in the California U.S. District Court. This present motion seeks merely to ratify that fact such that: 1) plaintiff need not further be hampered by proceeding in two separate courts upon the same issues and 2) such that party Susan Szanto is not adversely affected by any decision in this Court.

The Oregon District Court's Bankruptcy reference to this Court derives from the US District Court in Oregon's Local Rule 2100-1(a). The referral of the Oregon District Court need be withdrawn prior to bringing a change of venue application to transfer and consolidate proceedings in California.

Plaintiff's argument is that defendants, with this Court's approval, commenced **unnecessary proceedings** in the California District Court. That process unilaterally destroyed the Bankruptcy Referral because:

16-bk-33185          Withdraw Reference – pg. 3

1) it proceeded in the District Court rather than the Bankruptcy Court and 2) defendants' actions were solely for the purpose of obtaining costs and fees based on false and fraudulent never-served notice to Susan Szanto[1] – actions which need be punished as attorney abuse of process by the California District Court wherein these events occured.[2]

1. *The first issue here is that the avowed purpose of taking Susan Szanto's deposition regarding Victor Szanto's assault upon Susan could have been accomplished at any time in the California Superior Court, where that action is proceeding with merely a 1st class mail Notice of Deposition. However, as this Court has hopefully realized, defendants' **custom and habit** is to fabricate and intentionally falsify discovery events so that they can garner attorney's fees. (This occurred in the present case when plaintiff was not served with the initial discovery requests and defendants counsel was able to convince this Court of actual service.) Similarly, defendants parlayed theatrics on this Court regarding Susan Szanto not appearing for her deposition, when, in fact, Susan was never served. These theatrics garnered defendants immense solicitude from this Court, because this Court had already become biased against plaintiff – and so it was easy, a real cinch, to be biased against Susan Szanto as well!*

2. *Defendants have asked the California District Court for $40,758 of costs and fees [EXHIBIT A, p.2]. Susan Szanto has responded and asked that the District Court punish defendants counsel for abuse of process and falsification of the entire issue of personal service. Susan Szanto contends that it is defendants' modus operandi to falsify and unnecessarily to complicate discovery matters (as with Requests for Denials, 2-Unlicensed court reporters and bizarre conversations about meta data in this Court) **solely to gain unfair advantages and score unjustified fees based on falsified pleadings regarding discovery**.*

16-bk-33185          Withdraw Reference – pg. 4

As will be more full explained momentarily, debtor contends that Susan Szanto's joinder as a plaintiff in the instant action is one principal reason necessitating the District Court's full and complete assertion of jurisdiction over this case. Alternately there will need to be one, or more, duplicated proceedings in California for Susan Szanto alone.

Additionally, the Oregon Bankruptcy Court has totally ceased to be **objective** in its decision making. This has created a situation wherein **debtor Peter Szanto's positions are no longer afforded ANY due process or impartial consideration**, because the Bankruptcy Court has long ago decided that whatever debtor Szanto advocates is wrong, a lie or unsupported by law (or is merely another terrible aspect of Szanto's horrible and wretched demeanor.).

### 3. <u>Essential Facts</u>

This adversarial proceeding, must, **as a matter of law**, be adjudicated in the District Court. This is true because of the absolute, exceptionally essential and fundamental mandate of 28 U.S.C. § 157(d) which requires that when "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce" the matters **must** revert to the District Court.

Events, **not of debtor's making**, now require reversion, because non-Title 11 matters affecting interstate commerce have become very significant to the outcome of this action, as described *infra*.

### *a. Analysis of Governing Legal Principles*

Congress vested all original jurisdiction over bankruptcy cases in the United States District Court. 28 U.S.C. § 1334(a). Congress further provided that the District Court could refer all cases in bankruptcy and any and all proceedings arising under, in, or related to cases in bankruptcy, to the Bankruptcy Court. 28 U.S.C. § 157(a). Accordingly, until and unless the reference of jurisdiction to the Bankruptcy Court is withdrawn by an Order of the District Court, all jurisdiction over a bankruptcy matter resides with the Bankruptcy Court. Herewith and hereby, plaintiff explains the various reasons and the good causes why this Court should recommend that the District court withdraw its referral so as affirmatively to assert jurisdiction over all of this adversarial proceeding.

### *b. Statutory Rule Provisions*
### *With Respect to Withdrawal of Reference*

28 U.S.C. § 157(d) provides as follows:

"The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."

16-bk-33185          Withdraw Reference – pg. 6

As set forth in 28 U.S.C. § 157(d), the District Court has the authority to withdraw the entire bankruptcy case, or any part thereof, or any proceeding in the bankruptcy case or part thereof. The District Court can exercise its authority to withdraw cases or proceedings on its own motion or on timely motion of any party, for cause shown.

**28 U.S.C. § 157(d) also provides for what must be called mandatory withdrawal of the reference.** The mandatory requirement of the rule arises pursuant to the second sentence of § 157(d), the District Court **shall**, on timely motion of a party, withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both the Bankruptcy Code and other federal laws regulating organizations or activities affecting interstate commerce.

The absolutely mandatory nature of the rule is made clear by the Congress' use of the essential and imperative word **"shall."**

### c. Local Rule Grounds and Timeliness

The Oregon District Court's Local Rule 2100-4 allows withdrawal of the Bankruptcy Court reference upon recommendation of a Bankruptcy judge. This local rule is neither governed, nor predicated, upon any finite timeframe, presumably so that --- as demonstrated by the events herein – when events arise during the course of proceedings which necessitate withdrawal of the reference, this Court may make a decision at a time, and

16-bk-33185          Withdraw Reference – pg. 7

**as in the present circumstances**, when ultra clearly and very necessarily demanded by the facts. This application for withdrawal of the reference is directed to the Bankruptcy Court based upon new occurrences in this adversarial proceeding.

The newly occurring events which have affected this adversarial proceedings arise from the following events: 1) Defendants in this case commenced a companion proceeding in the US District Court in California [EXHIBIT B]. 2) That proceeding was a motion in violation of FRCP 11 by which this Court allowed defendants' counsel Mr. Henderson to fabricate false service in an effort to secure Susan Szanto's incarceration for contempt.[3] 3) Susan Szanto filed Notice of Joinder in the adversarial proceeding in this Court (Docket 334) and in the District Court [EXHIBIT D]; 4) Susan Szanto has filed a claim in the instant core bankruptcy regarding real property she owns as part of her community property estate with debtor [EXHIBIT C].

---

3. *In actuality, Susan Szanto's deposition could have been had at any time under the California state proceeding by means of a 1st class letter containing a Notice of Deposition.* **_Mr. Henderson's issuance of a subpoena was merely barratry masquerading as theatrics seeking purposefully and improperly to hornswoggle this Court into believing there was no alternate manner in which to secure Susan Szanto's testimony._** *Additionally, at the deposition Mr. Henderson spent several hours questioning Susan Szanto about her bank accounts, her finances and her participation in the Yankee Trust Corp. That inquiry, as more fully explained below, by affecting interstate commerce (IE, the Massachusetts Corp. that is the Yankee Trust, as well Susan Szanto's various interstate commercial bank relationships), the mandatory aspects of 28 U.S.C. § 157(d) have now been intentionally invoked and become part of the 16-3114 action. SEE BELOW FOR BROADER APPLICATION OF THESE FACTS TO THE LAW!!*

16-bk-33185          Withdraw Reference – pg. 8

5) When the adversarial proceeding regarding improper acts in Nevada's courts was filed, it was not known that the true, actual cause of action related entirely to defendants Victor, Anthony and Evye Szanto improperly and impermissibly influencing judicial officers in Nevada so as to impair Peter Szanto's Bankruptcy relief entitlement (which, *de facto* and *de jure*) clearly and necessarily affects Susan Szanto's creditor's claims. Now, that the defendants' actions in Nevada are sought to become part of this action, the matter should properly be in the District Court, because it relates to a dispute between citizens of different states regarding bribery, or other influence or corruption of state judicial officers so as to impair and (attempt to confound) the with wholly Federal Bankruptcy proceeding and thereby defeat Peter and Susan Szanto's civil rights.

## 4. Memorandum

### *a. Defendants' Nevada Actions Against Plaintiff and Usurped Money and Property in Nevada*

Debtor is asking the Court to examine the true nature and current status of the instant adversarial proceeding commenced by plaintiff. The goal is for this Court to recognize that the mandate of 28 U.S.C. § 157(d) requires that adjudication of this case must occur in the District Court.

Defendants undertook two nefarious and improper strategies to affect the proceedings herein.

16-bk-33185         Withdraw Reference – pg. 9

Defendants' first strategy was to approach two judges of the Courts of Nevada purposefully to render decisions in favor of defendants which intentionally thwarted Nevada law and Peter Szanto's ability to pursue bankruptcy relief and likewise impaired Peter Szanto's ability to conduct discovery of any type in Nevada.[4]

Defendants' efforts to influence judicial officials, which are likely bribery of courts and judicial officials in Nevada, is a clear aspect of why this action must now be mandatorily returned to the District Court. Also, the potential for bribery of judicial officials creates very ample likelihood that defendants counsel facilitated, suggested, and suborned that bribery.

These facts now require adjudication of "title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." (28 U.S.C. § 157(d)). The non-title 11 law which is implicated is 42 USC § 1983: Peter Szanto was sought to be deprived of complete Bankruptcy relief by Nevada judicial officials granting unwarranted relief

---

*4. The Court will recall that defendants' strategy was to enjoin debtor's ability to conduct litigation. There is ample and convincing evidence that this strategy was undertaken by Victor and Evye Szanto at the behest of -- and upon the instruction of -- their counsel. The intent was to stymie not just the adversarial proceeding, but debtor's entire bankruptcy by defendants creating TWO additional cases in Nevada. Defendants success in that endeavor contributed to debtor's still incomplete discovery in the adversarial proceeding herein.*

16-bk-33185          Withdraw Reference – pg. 10

from defendants fabricated violence claims which directly constrained Peter Szanto's 11 USC § 362 stay as well ability to conduct discovery in Nevada to gather evidence for the instant adversarial proceeding.

Furthermore, the grant of sham violence relief in Nevada clearly impaired Peter Szanto's ability to go to Nevada so as properly to conduct discovery of non-party witnesses who would testify to defendants' activities in abrogation of Peter Szanto's rights to his own property.[5]

The organizations affected thereby were Peter Szanto's estate in Bankruptcy as well as the various operating companies which Peter Szanto used in the creation of income. Susan Szanto's many interstate constraints relate to the Yankee Trust Corp (a Massachusetts Corp. of which she is director and shareholder since 2014) the interstate activities of which have been affected by defendants and their counsel. Additionally, another organization affected in its interstate endeavors is the Community Property Estate of Peter and Susan Szanto which is severally impaired to obtain complete discovery regarding the California U.S. District Court proceeding as well as obtaining essential Nevada discovery in both actions initiated by the defendants in that state court proceeding.

---

*5. Another reason defendants obtained their sham violence order in Nevada is so that Peter Szanto's Nevada discovery efforts and Nevada evidence acquisition efforts in Nevada could potentially be labeled stalking.*

Further interstate commerce affected by the sham restraining order in Nevada has been Peter Szanto's ability to continue his various business activities in Nevada related to his farrier and equine health businesses. Further impact on interstate commerce has been Peter Szanto's inability to obtain real property and commercial documents relating to defendants' Nevada business activities undertaken with Peter and Susan Szanto's money and property (IE, being able freely to travel in Nevada to the Nevada Secretary of State's Office and various county recorder and assessor's offices to secure further evidentiary materials).[6]

All these matters, and others not listed here, need be adjudicated in the District Court, because the complexity and nature of harm which the defendants have caused Susan and Peter Szanto is outside the bounds of solely Chapter 11 adjudication and is interstate commercial activity.

### *b. Action Regarding Victor Szanto, et al.*

Since the Szanto family disputes began in 2005, Susan Szanto has done nothing to favor either her husband (Peter) or her brother-in-law (Victor). Susan has sought consistently to make whatever efforts she possibly could to help resolve family rancor and to end family strife.

_____

*6. Plaintiff's ability to travel in Nevada was impaired, because the restraining order against plaintiff is still active in Nevada.*

16-bk-33185          Withdraw Reference – pg. 12

Susan's only active participation in family matters had been, through intense personal prayer, beseeching the all-mighty to bring peace to family quarrels.

Only after being assaulted by Victor Szanto and his pistol, did Susan taken the very prudent step of obtaining a restraining ORDER against Victor Szanto. <u>Susan Szanto requested no other relief from than protection</u>. Having obtained protection, Susan was not motivated either to join the action or to seek vengeance (E.G., a firearm arrest and / or immediate suspension of Victor's medical license).

However, as the facts demonstrate, nothing but vindictiveness, spite and retribution are upon the minds of the defendants and their various despicably amoral counsel.

For these reasons, Susan Szanto joined in Peter Szanto's claims against the defendants. [EXHIBIT D]. Importantly, Susan Szanto joined the action in the California District Court forum selected by the defendants [IE, defendants' choice of the District Court rather than the Bankruptcy Court was unilateral rejection of the Bankruptcy reference by the defendants.]

Now that this matter is proceeding in the California District Court, this Court should not compound complexities herein by re-establishing its own duplicate jurisdiction <u>**which the defendants themselves vacated by pursuing in the District Court a deposition which should have been taken in state court without the need for personal service**</u>.

16-bk-33185          Withdraw Reference – pg. 13

### 1. Susan Szanto's Claims

*Black's Law Dictionary* 5th Edition explains that an organization includes: corporations, business trusts, estates, trusts, partnerships, or any **association of two or more persons having a joint or common interest or any other legal or commercial entity**.

Peter Szanto and Susan Szanto have had a multitude of common and joint and community interests both legal and commercial, during the past 40 years. The most significant of these is the organization which is their **Marital Community Property Estate**. That Community Property estate has lost a significant portion of its wealth and assets due to fraudulent transfers and other ultra despicable and nefarious actions by the defendants.

**Peter and Susan Szanto's Marital Community Property Estate's  interstate commercial activities have been affected by the defendants' fraudulent transfers which have deprived the Community Property Estate of its assets, money and property.**

Upon this basis, mandatory return of this action to the District Court is necessary, because the **Marital Community Property Estate's interstate** commercial activities have been intentionally adversely impaired.

16-bk-33185          Withdraw Reference – pg. 14

## 2. The Yankee Trust is a Massachusetts Corp. Conducting Interstate Business

There are multiple reasons why Victor Szanto, *et als*, actions have affected the Yankee Trust's interstate activities. First, during the deposition of Susan Szanto, Mr. Henderson made the Yankee Trust his number one topic of concern and questioning. Many questions regarding the Yankee Trust Corp., a Massachusetts Corp., interstate activities have been intentionally dragged into the 16-3114 adversarial action by the defendants. Thus, as a matter of law, "title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce" (28 USC 157) **must** now be considered in the final resolution of the adversarial proceeding, because defendants themselves "opened the door" regarding this interstate commercial activity.

### 3. Interstate Affect on Susan and Peter Szanto Marital Community

One of the claims in the 16-3114 complaint is that Victor Szanto, *et al.*, made fraudulent **interstate** transfers money and property belonging to Peter Szanto from California to Nevada. By joinder to this action, Susan Szanto now makes claim against upon that usurped and expropriated property as her own community property asset.

The Title 11, as well as non-Title 11 claims regarding interstate activities of that organization known as the Peter and Susan Szanto Marital Community must necessarily be adjudicated in the United States District Court to obtain complete relief and recovery from the **Interstate Fraudulent Transfers** carried out by the defendants. (28 USC 157)

16-bk-33185          Withdraw Reference – pg. 15

### d. Legal Analysis / This Court Also Lacks Jurisdiction

**Neither Susan Szanto (individually) nor Susan Szanto (as an owner of ½ of the un-divisible Community Property Estate with Peter Szanto in the action proceeding in California's Family Court) nor Susan Szanto (as plaintiff in the California Central District proceeding versus Victor Szanto, *et al*) nor the Yankee Trust Corp are debtors in any Bankruptcy action!!** Therefore, this Court's jurisdiction cannot extend to Susan Szanto or the entities in which she is an active actor and an active participant in the actions enumerated above.

This Court's jurisdiction is separate and distinct from that of the US District Court, the Nevada state court and the California Family Court AND is limited to Bankruptcy. Neither Susan Szanto (in any of her various permutations) nor the Yankee Trust Corp. are in Bankruptcy and this Court cannot extend its limited Bankruptcy jurisdiction to destroy, raze, impair nor negate the rights of entities outside the bounds of its jurisdiction. *U.S. v. Huckabee* (1986) 783 F.2d 1546.

This honorable Bankruptcy court lacks any and all jurisdiction over controversies involving claims wherein a non-debtor or her property (IE, Susan Szanto) or controversies wherein the non-bankrupt has no liability to creditors or their interests. *Nixon v. Michaels*, (1930) 38 F.2d 420 accord *In re Burton Coal Co.*, (1942) 126 F.2d 447 accord *In re Lubliner & Trinz Theatres* (1938) 100 F.2d 646.

16-bk-33185          Withdraw Reference – pg. 16

In this plea for withdrawal of the Bankruptcy reference, this Court should recommend withdrawal of this adversarial proceedings, so that Susan Szanto's rights will not be impaired and because any decision without consideration of Susan Szanto's rights will necessitate that the entire proceeding will need to be re-litigated in its entirety in the proper US District Court, in diversity, in any event!!!!

### e. Permissive Aspects of 28 USC 157(d)

28 USC 157(d) also allows for withdrawal of the Bankruptcy reference **"for cause shown."**

Very good cause for withdrawal of the reference is also that the presiding judge has become **woefully, irreparably and un-reasonably biased, prejudiced and unfair** towards Peter Szanto and his positions.

This has been demonstrated in a multitude of decisions made by Judge McKittrick.

Some, (this list is not exhaustive) of these extremely egregious demonstrations of bias are:

a) Judge McKittrick's believes that all attorney statements and argument are holy-writ. Judge McKittrick has, all to Peter Szanto's detriment, embraced attorney statements and argument as the equivalent of sworn testimony irrespective of the fact that said statements were mere hearsay and factually un-proveable. Attorneys opposing Peter Szanto have thrived on these circumstances to make ever increasing outrageous statements to Peter Szanto's detriment.

16-bk-33185          Withdraw Reference – pg. 17

b) Judge McKittrick has allowed hearsay testimony by persons who had no possible way of knowing actual facts other than by being **told** to what to testify. This occurred when Chase's professional witness was allowed to testify to facts not within her knowledge and also when a person anxious to keep his job testified for the Department of Justice regarding listening to a tape recording of Szanto.

c) Judge McKittrick has suspended all discovery limitations for Victor Szanto, *et al*, while at the same time ending discovery for Peter Szanto 8 months ago. This has been to Szanto's immense detriment because Szanto can not even obtain responses to subpoenas.

d) Judge McKittrick has not allowed Peter Szanto to have the electronic filing privilege, even though every other court in which Peter Szanto is proceeding allows him to have that ECF filing ability.

e) Judge McKittrick **has not enforced** discovery rules against Bank of America and so Peter Szanto has been unable to prepare his Motion for Summary Judgment, **because he has been deprived of the fundamental right to discovery and discovery enforcement by Judge McKittrick.**

f) The first discovery set allegedly propounded by Mr. Henderson was never served. The due date of that discovery coincided with Victor Szanto's assault on Susan Szanto. Irrespective that lateness was necessitated by Peter Szanto taking affirmative action to mitigate further possibility of attack, Judge McKittrick punished Peter Szanto's lateness (even though prevention of Susan and Jakkob Szanto's deaths were the sole reasons for that lateness.)

g) Judge McKittrick comments regularly on his dislike of Peter Szanto's demeanor. Peter Szanto's demeanor is simply that of an old man over which Szanto has limited control (Szanto's demeanor could not even be fixed by cosmetic surgery). Indeed, Judge McKittrick's animosity is nothing other than irrational projection of what a beautiful and idealized demeanor ought to be. Indeed, it is not but appearance discrimination against the un-beautiful.

h) Judge McKittrick has often commented in-the-abstract as to Peter Szanto's credibility without identifying any actual instances. This pattern of judicial conduct merely allows attorneys opposing Szanto to make unreasonable and immaterial attacks (in the guise of credibility) as jingoistic slurs which are unrelated to anything of relevance save to create more animosity towards Peter Szanto.

i) Numerous times Judge McKittrick has denied Peter Szanto's right to the assistance of counsel. Judge McKittrick has stated that Szanto could obtain counsel, but would not stay proceedings while Szanto secured counsel. Now, every attorney in Portland knows that if they should dare to assist Szanto, their own credibility and demeanors before Judge McKittrick will be irredeemably destroyed for all other cases.

j) Judge McKittrick would not enforce Peter Szanto's subpoena directed to Victor Szanto, *et al*. This sends a message to defendants that they simply do not need to comply with any process issued by Peter Szanto, because Judge McKittrick will not enforce even the basic rules necessary for Peter Szanto to prevail.

k) At the 11-28-17 hearing, materials were proffered by Mr. Kukso prior to being reviewed by the Judge in New Jersey. Judge McKittrick allowed these materials into evidence. After the hearing, Judge McKittrick's clerk, Ms Smith, forcibly took those papers away from Szanto. Ms Smith would not have acted other than on Judge McKittrick's order; that is, Judge McKittrick intentionally made certain that materials proffered at a hearing were unavailable for review.

l) Victor Szanto admitted at his deposition that he had "boxes boxes and boxes" of relevant materials. Mr. Henderson stated that the materials were not relevant at all. Judge McKittrick accepted Mr. Henderson's testimony as more true. And so important evidence in this action was spoliated away from necessary consideration and proper adjudication.

Thus, the fundamental good cause for withdrawal of this adversarial proceedings from the Bankruptcy court is Judge McKittrick's

continuing lack of fairness toward Peter Szanto, intense bias against Peter Szanto and clear unwillingness to consider Peter Szanto's points of law. The lack of impartiality manifests itself by creating a situation wherein Peter Szanto is deprived of all possibility of fair, proper, equal and reasonable adjudication of the adversarial matters now before this Court.

## 5. Declaration of Peter Szanto

Declaration is a separate companion document.

## 6. Conclusion

For the reasons stated herein, debtor prays that this Court review the facts of the adversarial proceedings, as presented herein, and recommend that this adversarial proceeding proceed in the District Court.

1st, judicial bias can never be part of any litigation. Every party to an action is entitled to "due process right to a fair trial before an unbiased judge." *Citizens United v. FEC* (2010) 558 U.S. 310, 360. Also, a "fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison* (1955) 349 U.S. 133, 136.

2nd, the mandatory part of 28 USC 157 requires transfer whenever "title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce" must be adjudicated so as to achieve complete and final relief. Here, the various organizations which comprise Peter and Susan Szanto's private and business lives must be

adjudicated under Title 11, as well as FRCP 11, 42 USC 1983 and other non-Bankruptcy laws.

Respectfully,

Dated 4-30/2018 _____ Peter Szanto

## **Proof of Service**

My name is Maquisha Reynolds, I am over 21 years of age and not a party to the within action. My business address is PO Box 14894, Irvine CA 92623. On the date indicated below, I personally served the within:

## **Motion**

by e-mail to Mr. Olsen and Mr. Henderson at:

nhenderson@portlaw.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed at Portland OR.

Dated 4-27-2018 /s/ Maquisha Reynolds

16-bk-33185          Withdraw Reference — pg. 21

**Jeremy G. Tolchin, SBN #239714**
jtolchin@portlaw.com
Motschenbacher & Blattner, LLP
117 SW Taylor St., Suite 300
Portland, OR 97204
Telephone: (503) 417-0509
Facsimile: (503) 417-0459

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| In re:<br><br>PETER SZANTO,<br><br>       Debtor. | No. 8:17-MC-00019-DOC-DFM |
| PETER SZANTO,<br><br>       Plaintiffs,<br><br>       v.<br><br>EVYE SZANTO, VICTOR SZANTO,<br>NICOLE SZANTO, KIMBERLY SZANTO,<br>MARIETTE SZANTO, ANTHONY<br>SZANTO, AUSTIN BELL and BARBARA<br>SZANTO ALEXANDER,<br><br>       Defendants. | Oregon Bankruptcy Case No. 16-33185-pcm11<br><br>Oregon Bankruptcy Adv. Proc. No. 16-03114-PCM<br><br>DEFENDANTS' APPLICATION FOR ATTORNEYS' FEES AND COSTS AND MEMORANDUM IN SUPPORT |

## I.    MOTION

*A1*

Defendants Evye Szanto, Victor Szanto, Nicole Szanto, Kimberly Szanto, Mariette

Szanto, Anthony Szanto, Austin Bell and Barbara Szanto Alexander (collectively referred to as

PAGE 1  - DEFENDANTS' APPLICATION FOR ATTORNEY'S FEES AND COSTS AND MEMORANDUM IN SUPPORT
{00036662:1}

"Defendants") move the court for an order granting an award of attorneys' fees and costs pursuant to this court's Order on Plaintiff's Motion for Contempt (the "Order") [Dkt. No. 95]. In support of his motion, Defendants rely on their Memorandum in Support, the declaration of Nicholas J. Henderson (the "Henderson Decl."), the declaration of Michael L. Fell (the "Fell Decl.") and the documents in the court's record.

## II.    MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY'S FEES

Defendants submit this Memorandum in Support of their Motion for Attorneys' Fees in the sum of $36,135.76, and costs in the sum of $4,621.80 for a total request of $40,757.56.

Attached as Exhibit A is a detailed ledger of Defendants' attorney fees for the law firm of Motschenbacher & Blattner LLP that have been incurred during Defendants' protracted effort to depose Susan Szanto – a difficult and expensive process driven solely by Mrs. Szanto's contemptuous conduct. The attorney fees on Exhibit A total $30,576.00. Attached as Exhibit B is a detailed ledger of Plaintiff's costs that have been incurred during Defendants' attempts to depose Susan Szanto. The costs on Exhibit B total $4,621.80. Attached as Exhibit C are the attorney fees billed by attorney Michael L. Fell and his law firm. The fees on Exhibit C total $5,559.76.

Plaintiff's requested fee rates are within, and below, the range of fees customarily charged by attorneys in comparable areas of practice at comparable Portland law firms. (Henderson Decl. ¶ 5.) This Court should use the prevailing market rate in the community to determine an appropriate award of attorney fees. See *Sorenson v. Mink*, 239 F.3d 1140, 1149 (9th Cir. 2001).

Facts relating to the experience, reputation, and ability of counsel for the defendant are set forth in the Declaration of Nicholas J. Henderson in Support of Defendants' Motion for Attorneys' Fees and Costs (Henderson Decl. ¶¶ 6-9), and the Declaration of Michael L. Fell in Support of Defendants' Application for Attorney's Fees filed with this Memorandum. (Fell Decl., ¶¶ 6-7).

**A2**

Defendants readily acknowledge this fee petition is higher than a typical fee petition related to a discovery dispute. However, there are many factors which increased Defendants' fees and costs. Susan Szanto evaded of service, resulting in the need to hire a private investigator to locate her. She refused to acknowledge the fact that she was served with subpoenas, and she refused to attend numerous depositions for which had prepared. As a result of Mrs. Szanto's dishonesty and proclamation that she was 500 miles away at the time she was served with a subpoena at her place of business, Defendants' counsel was compelled to subpoena Mrs. Szanto's employer to produce time records proving Mrs. Szanto was at work on the date and time in question. Not unexpectedly, Mrs. Szanto's husband questioned the authenticity of the records produced. Fully aware of Mr. and Mrs. Szanto's history of fabrications and disingenuous arguments, Defendants' counsel was compelled to assist both its process server and Mrs. Szanto's employer in preparing declarations of sufficient detail and clarity to withstand any such attack. And of course, Defendants' counsel had to prepare two motions (the motion to compel Mrs. Szanto's compliance with subpoenas [Dkt #1] and the subsequent contempt motion [Dkt. #11] following her failure to comply with that Order) before Mrs. Szanto finally relented and agreed to appear for her deposition.

The Court has already ruled that Defendants are entitled to recoup the attorneys' fees and costs incurred compelling Mrs. Szanto to comply with deposition subpoenas. [Dkt. No. 5]. The only material difference since that Order is the amount of fees and costs incurred compelling Mrs. Szanto to comply – fees and costs that were completely avoidable and driven solely by Mrs. Szanto's contemptuous conduct.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /





PAGE 3 - DEFENDANTS' APPLICATION FOR ATTORNEY'S FEES AND COSTS AND MEMORANDUM IN SUPPORT
{00036662:1}

## III. CONCLUSION

For all of the foregoing reasons, Defendants respectfully request the Court to grant their Application for Attorney's Fees and Costs in the amount of $40,757.56. Defendants reserve the right to supplement this motion with fees and costs incurred subsequent to the date it is filed.

DATED this 22nd day of January, 2018.


MOTSCHENBACHER & BLATTNER LLP


/s/ Nicholas J. Henderson
Nicholas J. Henderson, OSB #074027
Of Attorneys for Plaintiff



PAGE 4 - DEFENDANTS' APPLICATION FOR ATTORNEY'S FEES AND COSTS AND MEMORANDUM IN SUPPORT
{00036662:1}

ACCO,(DFMx),DISCOVERY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Southern Division − Santa Ana)
## CIVIL DOCKET FOR CASE #: 8:17−mc−00019−DOC−DFM

Peter Szanto v. Evye Szanto et al
Assigned to: Judge David O. Carter
Referred to: Magistrate Judge Douglas F. McCormick
Case in other court:  USBC District of Oregon,
                 16−33185−pcm11
                 USBC District of Oregon, AD
                 16−03114−PCM
Cause: Civil Miscellaneous Case

Date Filed: 09/22/2017
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

## There are proceedings for case 8:17−mc−00019−DOC−DFM but none satisfy the selection criteria.

EXHIBIT B

**Fill in this information to identify the case:**

Debtor 1  Peter Szanto

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **District of Oregon**

Case number: 16–33185

**FILED**

**U.S. Bankruptcy Court**
**District of Oregon**

2/26/2018

**Charlene M. Hiss, Clerk**

EXHIBIT C

## Official Form 410
## Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Szanto, Susan

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Szanto, Susan

Name

11 Shore Pine
Newport Beach CA 92657
NEWPORT COAST, CA 92657

Contact phone _____9498872369_____

Contact email _____

Where should payments to the creditor be sent? (if different)

Name

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                     Proof of Claim                     page 1

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| 7. **How much is the claim?** | $     3961438.00     **Does this amount include interest or other charges?**<br> ☑ No<br> ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>1) community estate assets, 2) marital estate assets, 3) community property assets under California Law |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:**    _____<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**    $ _____    EXHIBIT C<br><br>**Amount of the claim that is secured:**    $ _____<br><br>**Amount of the claim that is unsecured:**    $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**    $ _____<br><br>**Annual Interest Rate** (when case was filed)    _____ %<br>☐ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☐ No<br>☑ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ 3961438.00 |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies | | $ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☐ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☑ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    2/26/2018

      MM / DD / YYYY

EXHIBIT C

/s/ Peter Szanto

Signature

Print the name of the person who is completing and signing this claim:

| Name | Peter Szanto |
|---|---|
| | First name    Middle name    Last name |
| Title | |
| Company | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 11 Shore Pine |
| | Number   Street |
| | NEWPORT COAST, CA 92657 |
| | City   State   ZIP Code |
| Contact phone    9498872369 | Email    szanto.pete@gmail.com |

Official Form 410            Proof of Claim            page 3

FILED

SUSAN SZANTO *949-720-7005*
11 Shore Pine
Newport Coast CA 92657

2018 JAN 31  PM 2: 13

CLERK US. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

## United States District Court

### in and for the Central District of California



EXHIBIT D

**In Re Peter Szanto,**

**Debtor and Plaintiff**

**(in Oregon Bankruptcy Cases**

**16-bk-33185 and 16-ap-3114)**

===================

**Santa Ana Division**

**# 17–MC-00019 DOC DFM**

**Notice of Joinder**
**of Indispensable Party**
**Susan Szanto**

---

May it please the Court:

### DECLARATION of Susan Szanto

1. My name is Susan Szanto; I am over 21 years of age

2. I was previously the non-party whose deposition was sought and whom
   the Court directed to be deposed.

3. This is my truthful declaration subsequent to said deposition.

17-MC-19          NOTICE  – pg. 1

ORIGINAL

4. At said deposition of January 18, 2018 my thoughts, recollections and memories were refreshed by the questions asked by the defendants.

5. With great psychological pain and intense emotional sadness, I recollected vividly all of my current, pending and unresolved claims against the defendants herein.

6. During the deposition and the days thereafter, my memories were refreshed by consideration of the questioning by the defendants.

7. I recalled the immense pain and horror the defendants have purposefully inflicted upon me during the previous years.

8. That intense physically pain is continuing now.

9. I personally obtained a copy of the underlying complainant in this matter.

10. I concur in, and support, and affirm all of the claims made in that complaint.

EXHIBIT D

11. Upon that ground, I now join this action with plaintiff against the defendants.

12. I know to an absolute certainty that I am an indispensable party in this matter because complete adjudication of plaintiff's claims is impossible without the adjudication of my same claims against the defendants,

13. Upon that ground, I now join this action with plaintiff against the defendants.

14. Pursuant to FRCP 19 and supported by FRCP 20(a)(1) I also assert:

(A) my right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences as plaintiff; and

17-MC-19

-page 2-

(B) that  the questions of law or fact common in plaintiffs action all arise
in the action now already before this Court.

15. I learned only for the first time on January 18, 2018 that my rights and
claims are impaired by the defendants and that I am entitled to relief for
defendants' actions against me personally based upon this action which is
already before this Court.

EXHIBIT D

I declare under penalty of perjury under the laws of the United States
that the foregoing is true and correct. Signed at Santa Ana California.

January 26, 2018 *Susan Szanto* Susan Szanto

17-MC-19                    NOTICE  – pg. 3

PETER SZANTO 949-887-2369
11 Shore Pine
Newport Beach CA 92657

# United States Bankruptcy Court

## in and for the District of OREGON

### 1001 SW 5th Av., Portland OR 97204

| | |
|---|---|
| **In Re Peter Szanto**<br><br>**Debtor** | # Adversarial # 16-ap-3114<br><br>### core case:16–bk-33185-pcm7<br><br>**Debtor's Declaration Supporting Motion RE: Judge McKittrick's Recommendation for Withdrawal of District Court Referral as to Bankruptcy Division Case 16-ap-3114 for Further Proceedings in the United States District Court**<br><br>Hon. Judge Peter C. McKittrick, presiding |

## 1. Declaration of Peter Szanto

1. My name is Peter Szanto, I am the plaintiff, debtor herein.

2. This is my truthful declaration regarding the necessity of District Court adjudication in the adversarial proceeding discussed herein.

16-bk-33185          Declaration April-30--2018 – pg. 1

3. Throughout the 16-3114 adversarial proceeding I have realized that defendants' litigation and discovery strategies involved purposefully misleading this Court as well as the District Court in California.

4. When this case began, I believed Judge McKittrick to be a fair and impartial judge who had the wisdom to recognize that attorneys will do anything and everything to win cases.

5. I believed that Judge McKittrick recognized that attorney abuse and misconduct are endemic in the practice of law.

6. And that attorneys, when confronted by a *pro se* litigant, immediately begin the psychological scam upon the presiding judge of fabricating misdeeds by the *pro se* party irrespective of truth justice or law.

7. This has been demonstrated most emphatically in this action by Mr. Henderson's non-stop testimony in this case.

8. Judge McKittrick is enamored with Mr. Henderson's testimony and simply does not understand that Mr. Henderson would say anything to win this case, irrespective of being honest!!

9. Mr. Hendesron's most despicable mis-directions of the Court have been (this list is not-exhaustive):

9a: Pretending that I was served with the first batch of his discovery when there was no such service.

9b: Knowingly allowing his clients to make two "a civil action is violence motions" in contravention of both 11 USC 362 and Nevada law. There is substantial evidence that Mr. Henderson facilitated and subborned these motions (probably through Mr. Olsen, defendant's California counsel). When I received the first of these motions, I called Mr. Olsen (with whom I have been litigating since 2012). I told Mr. Olsen that I could tell that the spreadsheet included with the motions was his work. Mr. Olsen tacitly admitted my accusation, by simply hanging up on me. (IE, another tacit admission by silence *Course v. Stead* (1800) 4 U.S. 22.

9c: Testifying to this Court that the "boxes and boxes and boxes" (IE. 6 boxes) of material which Victor Szanto represented were damning evidence against Peter Szanto, were just personal notes.

The Court's acceptance of Mr. Henderson's representations was particularly biased against plaintiff, because it is likely that had the Court allowed examination of the 6 boxes, they would have yielded the materials which Victor Szanto had represented as damning

The Court's disregard of this evidence demonstrates clearly that the Court is not concerned with the truth in this action.

9d. Mr. Henderson's theatrics regarding a subpoena to Susan Szanto, as well as the subsequent months of phony service and continuing extensions of discovery, **when, in fact, Susan's deposition could have been secured in the on-going restraint of violence by a Notice of Deposition sent by 1st Class Mail – no personal service necessary.**

9e. Mr. Henderson violating his representations to this Court about the purpose of the deposition of Susan Szanto as having relevance to this case by asking dozens of questions about Susan's Yankee Trust Business and Susan's Bank accounts.

As proof of the fact that the deposition of Susan Szanto was nothing else but an effort to secure discovery sanctions, Mr. Henderson asked absolutely no questions about Victor Szanto's attack on Susan Szanto (which was the avowed purpose of the deposition).

9f. Mr. Henderson has not allowed Susan Szanto to review her deposition in a secure location.

9g. Mr. Henderson failed to respond to plaintiff's subpoena regarding the deposition transcripts in his possession.

10.   Defendants have been very successful in convincing Judge McKittrick of false facts and in their own blatant lies.

11.   Likewise, defendants' counsel often fail properly to serve papers.

12.   Generally, defendants often support their failed service with perjured proofs of service.

13.   Whenever Judge McKittrick is confronted with a situation where he has to decide who is lying, he always presumes Peter Szanto is lying!

14.   Such judicial bias arises from Judge McKittrick's mistaken belief in defendant's counsel's veracity and ethics.

15.   However, proof that defendants readily lie is available in this action and in the case which is proceeding in the California District Court

16.   Failed service in U.S. District Court in California's Central District case 17-cv1660 is evidenced in defendants first 22 papers, none of which were ever served.

17.   The civil cover sheet of that filing (Docket Entry 1-21, p1) also contains the false statement that on 9-22-17 Peter Szanto was a resident of Orange County CA.

18.   On 9-22-17, I was a resident of Oregon.

19.   Thereafter, defendants filed another action in the U.S. District Court in the Central District of California, # 17-mc-00019.

20.   That action's first 22 filings were likewise never served.

16-bk-33185          Declaration April-30--2018 – pg. 5

21. Defendants' civil cover sheet in that action also has the false statement that on 9-22-17 Peter Szanto was a resident of Orange County CA.

22. The evidence of the fact of failed service, as well as false statements does not rely on my statements, but is rather proven by the record itself.

23. That is, on this occasion the Court is able to examine the record and objectively see that even though it perceives defendants and their counsels as always truthful, that proof of their false statements and failed service is in the record.

24. In this instance the record is clear that neither I, the plaintiff, nor the party to be deposed were served with the first 22 papers in the California Central District actions, which papers were preliminary to defendants seeking contempt sanctions against the person, Susan Szanto, whom they never served.

25. **Specifically this is proof of what plaintiff was stating about discovery on him: that defendants use discovery tactics solely to attempt to obtain unfair advantage so as to secure discovery sanctions though failed service.**

26. In particular, defendants' counsel's manner of deception has been to posit as truth matters about which only their statements are the required proof (no corroboration is ever necessary when Mr. Henderson speaks!!).

27. Furthermore, the Court has relied on its own intense personal belief that all attorneys tell all of the truth all of the time to make the decision that all attorneys opposing plaintiff must be the truth tellers and that Peter Szanto must be the liar.

28. The Court has consistently refused to see that failed service and false statements as defendants' affirmative strategy to obtain discovery sanctions and to win this action through contrived false facts.

29. Rather the Court has presumed plaintiff's complaints of failed service to be just another indicator of plaintiff's lack of credibility.

30. However, there is proof that defendants have engaged in deception.

31. The significance and relevance of these facts to the instant Withdrawal of Reference Motion is that it demonstrates Judge McKittrick's bias against plaintiff regarding truthfulness, when in fact, defendants' truthfulness is being demonstrated to be lacking.

32. This was precisely the same strategy as defendants preying upon the Court's belief in the unshakeable veracity of counsel.

33. A similar charade was played on this Court by defendants demands to take a deposition in California.

34. Defendants right to take a deposition in California Family Court was always available without any subpoena.

35. However, defendants played out the theatrics of failed and phony service simply to make plaintiff appear even less credible.

(IE, the presumption has been embraced by this Court that Susan Szanto failing to appear at a deposition must be plaintiff's fault! or somehow related to some action or act by plaintiff.)

36.   Again the Court did not realize that it was being deceived by perjured proofs of service in another district regarding a deposition which could have been had at any time by way of ordinary mail service of a Notice of Deposition in the Family Court action.

37.   Upon these grounds and many others this Court has developed intense bias against me which makes continuation of the this adversarial proceeding in this Court fore-ordained to have adverse outcomes for me.

38.   I believe to an absolute certainty that the bias I have described here (as well as further bias stemming from the conversion trial's mis-interpretations of banking done by Mrs. Szanto wherein I was a pay-on-death beneficiary as separate accounts of mine) have created a situation where a fair and impartial trial or further proceedings in this Court are **ABSOLUTELY IMPOSSIBLE**.

39.   These matters of which I am complaining are the intense and intentional misleading of this court – and the Court embracing those efforts so as to be willingly misled create the good cause necessary to sustain a 28 USC 157(d) revocation of Bankruptcy referral, because **NO FAIR OR IMPARTIAL HEARING CAN OCCUR IN THIS COURT!!!!** These events are the "cause shown" required in the 1st sentence of 11 USC 157(d), because judicial impartiality is a pre-requisite for any judicial decision.

40.   Impartiality no longer exists in this action.

41.   And the decisions that this Court has made since being fooled regarding my alleged discovery lateness (which was actually just defendants' failed service) have all been to my detriment.

42.   In this Court and the California District Court defendants' efforts have been all to seek the punitive aspects of the discovery rules, but not to obtain admissible evidence.

43.   Defendants' strategy is not one of discovery, but rather of falsely creating opportunities for discovery punishment against the Susan Szanto and myself.

44.   This was also evidenced in that paper the Court mentioned wherein the defendants were referring to themselves as plaintiffs.

45.   The supposition being that defendants merely cut and paste the same demand for sanctions from case to case and merely forgot to change their side on this occasion.

46.   Thus, defendants strategy is contrary to the intent of discovery disclosure rules which are the actual substance of the discovery laws; the goal being trial preparation and not the accumulation of sanctions.

47.   But defendants have successfully changed that goal to that of sanctions and the creation of opposing party prejudice.

48.   Defendants have been very successful in that regard in this case.

49.    The deposition of Susan Szanto did not focus on any matter
       relevant to the within action. Rather the questions focused on
       Susan Szanto's finances and her involvement in the Yankee
       Trust Corp.

50.    For this reason, defendants themselves invoked the mandatory
       withdrawal of reference aspects of 28 USC 157 by involving
       the interstate activities of organizations (Yankee Trust being a
       Massachusetts Corporation) and Susan Szanto's finances being
       an undivided ½ of the Marital Community Property Estate of
       Susan and Peter Szanto under California law (which cannot be
       adjudicated under Oregon's non-community property rules), but
       rather requiring adjudication under laws other than Title 11 as
       described in the 11 USC 157(d) withdrawal of reference law.

51.    Another non-title 11 law which requires adjudication is Victor
       and Evye Szanto and their counsel's improper contact with
       Nevada judicial officers improperly to affect my Bankruptcy.

52.    Apparently this Court did not grasp the co-incidence between
       Victor Szanto's threatening Susan Szanto with violence and the
       due date of plaintiff's discovery.

53.    However, when the facts are looked at objectively, the lateness
       of plaintiff's discovery can readily be accounted for by the time
       needed by plaintiff to go to California to protect his spouse and
       son.

54.   Likewise, the Court "did not get" that Victor and Evye Szanto obtained a Nevada violence order specifically to stymie my efforts to interview Nevadans regarding defendants' financial and business activities which would be admissible evidence in this action.

55.   I believe to an absolute certainty that Judge McKittrick is biased and prejudiced against me in the following ways (this list is non-exhaustive and is limited for the sake of expedience):

a) Judge McKittrick's *modus opernadi* is to believe that all attorney statements and argument are the equivalent of holy-writ. Judge McKittrick has, all to my detriment, embraced attorney statements and argument as the equivalent of sworn testimony irrespective of the fact that said statements were merely hearsay and factually un-proveable. Attorneys opposing me have  thrived on these unfair circumstances to make ever increasingly outrageous statements, all to my detriment.

Hopefully, the Court recalls Mr. Laurick calling me a tar-baby on the record.

This is relevant to the withdrawal of reference issue because it demonstrates good cause to remove this action from a biased judge.

b) Judge McKittrick has allowed hearsay testimony by persons who had no possible way of knowing actual facts other than by being **told** as to what to testify. This occurred when Chase's professional witness was allowed to testify to facts not within her knowledge and also when a person anxious to keep his job testified for the Department of Justice regarding listening to a tape recording of me (or perhaps somebody who he was told was me). But, in fact, listening to a tape recording can never overcome the hearsay exception, because it is not live or actual testimony.

    This is relevant to the withdrawal of reference issue because it demonstrates good cause to remove this action from a biased judge.

c) Judge McKittrick has suspended all discovery limitations for Victor Szanto, *et al*, while at the same time ending discovery for me 9 months ago. This has been to my immense detriment because I can not even obtain responses to subpoenas.

    This is relevant to the withdrawal of reference issue because it demonstrates good cause to remove this action from a biased judge.

d) Judge McKittrick has not allowed me to have electronic filing privileges, even though every other court in which I am proceeding allows me to have that ECF filing ability.

   This is relevant to the withdrawal of reference issue because it demonstrates good cause to remove this action from a biased judge.

e) The first discovery set allegedly propounded by Mr. Henderson was never served. The due date of that discovery coincided with Victor Szanto's assault on Susan Szanto.

   1) it is my absolute belief that Mr. Henderson liased and planned the firearm assault on my wife with Victor Szanto solely for the purpose of causing me to be late with discovery. That is, Mr. Henderson, reasoned correctly that if he suborned and facilitated Victor Szanto's attack on my wife, I would rush to her assistance and thereby be tardy on my discovery responses.

   2) The same was true with Mr. Henderson's non-statutory and *ultra vires* request for denials. Mr. Henderson reasoned that attempting to respond in the negative to questions which are not statutorily allowed (IE, request for denials are not the statutorily allowed requests for admissions) would take far

longer time and be much more difficult to respond than requests for admissions. Thereby creating the possibility of further lateness and more opportunity to request sanctions.

Irrespective of all else, lateness was necessitated by my taking affirmative action to mitigate further possibility of attack on my family by Victor Szanto. Judge McKittrick punished my lateness (even though prevention of Susan and Jakkob Szanto's possible injury or deaths were the sole reasons for that lateness.)

This is relevant to the withdrawal of reference issue because it demonstrates good cause to remove this action from a biased judge.

f) Judge McKittrick comments regularly on his dislike of my demeanor. My demeanor is simply that of an old man over which I have limited control (My demeanor likely could not even be fixed even by cosmetic surgery; I will never look like a blushing 18 year-old under any circumstances). Indeed, Judge McKittrick's animosity about my demeanor is nothing other than irrational projection of what a beautiful and idealized demeanor ought to be. Indeed, it is merely reprehensible and vile appearance discrimination.

Also, my demeanor is often that of a person in a state of shock who has to oppose false and misleading statements of those opposing me.

This is relevant to the withdrawal of reference issue because it demonstrates good cause to remove this action from a biased judge.

g) Judge McKittrick has often commented in-the-abstract as to my credibility without identifying any actual instances. This pattern of judicial conduct merely allows attorneys opposing me to make unreasonable and immaterial attacks (in the guise of credibility) as jingoistic slurs which are unrelated to anything of relevance save to create more animosity towards me.

This is relevant to the withdrawal of reference issue because it demonstrates good cause to remove this action from a biased judge.

h) Numerous times Judge McKittrick has denied me the right to the assistance of counsel. Judge McKittrick has stated that I could obtain counsel, but would not stay proceedings while I secured counsel.

16-bk-33185          Declaration April-30--2018 – pg. 15

That is, securing counsel is a time-consuming effort (and every attorney wants payment even before asking the Court for permission to be paid). Without a stay, the time consuming effort of securing counsel would negatively affect my ability to prepare papers for this action on time.

Furthermore, every attorney in Portland now knows that if they should dare to assist me, their own credibility and demeanors before Judge McKittrick will be irredeemably destroyed for all their other cases.

This is relevant to the withdrawal of reference issue because it demonstrates good cause to remove this action from a biased judge.

i) Judge McKittrick would not enforce my subpoena directed to Victor Szanto, *et al*. This sends a message to defendants that they simply do not need **ever** to comply with any process issued by me, because Judge McKittrick will not enforce even the basic rules necessary for me to obtain admissible evidence.

This is relevant to the withdrawal of reference issue because it demonstrates good cause to remove this action from a biased judge.

16-bk-33185          Declaration April-30--2018 – pg. 16

j) At the 11-28-17 hearing, materials were proffered by Mr. Kukso prior to compliance with the New Jersey judge's ORDER requiring review by that Judge in New Jersey prior to presentation at any other hearing. Judge McKittrick allowed these materials into evidence without the New Jersey judge's review. After the hearing, Judge McKittrick's clerk, Ms Smith, forcibly took those papers away from me. Ms Smith would not have acted other than on Judge McKittrick's order; that is, Judge McKittrick intentionally made certain that materials proffered at a hearing were unavailable for review.

This is relevant to the withdrawal of reference issue because it demonstrates good cause to remove this action from a biased judge.

k) Victor Szanto admitted at his deposition that he had "boxes boxes and boxes" of relevant materials. Mr. Henderson stated that the materials were not relevant at all. **Judge McKittrick accepted Mr. Henderson's testimony as more holy-writ emanating from an attorney who could never-ever lie**. And so important evidence was spoliated away from necessary consideration and proper adjudication in this action.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed at Irvine CA.

Dated 4-30/2018    /s/ _____ Peter Szanto

16-bk-33185          Declaration April-30--2018 – pg. 17

# PROOF OF SERVICE

My name is Maquisha Reynolds, I am over 21 years of age and not a party to the with action. My business address is PO Box 4614, Portland OR 97208. On the date indicated below, I personally served the within:

## DECLARATION

a. Internal Revenue Service, PO Box 7346, Philadelphia PA 19101
b. First Service Residential, 15241 Laguna Canyon Rd, Irvine CA 92618
c. JPMorgan Chase Bank, represented by:
            Cara Richter  c/o Shapiro & Sutherland
1499 SE Tech Center Place, Suite 255, Vancouver, WA 98683

d. Bank of America, c/o McCarthy & Holthus
            920 SW 3rd Av., Portland OR 97204
e. Oregon Department of Revenue, 955 Center St., Salem OR 97301
f. Chapter 7 Trustee, Stephen P Arnot, POBox 1963, Lake Oswego OR 97035
            by e-mail to arnotlaw@sbcglobal.net

by mailing copies to the above parties *via* 1st class mail, postage prepaid, or by e-mail.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed at Irvine CA.

Dated 4-30-2018 *Maquisha Reyn...* Maquisha Reynolds

16-bk-33185            Declaration April-30--2018 – pg. 18



ORIGIN ID:DTHA      (949) 887-2369
SZANTO
SZANTO
P.O.BOX 14894

IRVINE, CA 92623
UNITED STATES US

SHIP DATE: 30APR18
ACTWGT: 0.50 LB
CAD: 112243018/INET3980

BILL SENDER

TO   CLERK-DIST OREGON
     US BANKRUPTCY COURT PORTLAND
     1001 SW 5TH AVE #700
     ROOM 700 @ 1001 SW 5TH AV
     PORTLAND OR 97204
     (503) 610-0865          REF:
     INV:
     PO:                     DEPT:





FedEx Ship Manager - Print Your Label(s)

FedEx
TRK# 0201  7721 1412 5092

TUE – 01 MAY AA
STANDARD OVERNIGHT

WS MRIA                    97204
                  OR–US    PDX



#2631660 04/30 552J2/782B/DCA5

Extremely Urgent