Peter Szanto   949-887-2369
11 Shore Pine
Newport Beach CA 92657

# U.S. BANKRUPTCY COURT

### DISTRICT OF OREGON
*1001 SW 5th Ave #700 Portland, OR 97204 (503) 326-1500*

| | |
|---|---|
| In Re: Peter Szanto, Debtor <br> ---------------------------------------- <br> Peter Szanto, Defendant <br> **vs,** <br> Evye Szanto, et al, <br> Plaintiffs | **Adversarial # 16-ap-3114** <br><br> core case:16-bk-33185-pcm7 <br><br> **Peter Szanto's Notice of Motion** <br><br> **And Motion for Change of** <br><br> **Venue** <br><br> **HEARING REQUESTED** |

## 1. Plaintiff's Certification Relating to Pre-filing Conferral (Certification Pursuant to LBR 7007-1 (a))

On 5-22-19, during regular business hours, debtor telephoned plaintiffs' counsels Mr. Henderson and Mr. Olsen. Not only did debtor seek to discuss the instant application for venue change, but hoped there would be meaningful discussion: since change of venue at the present time would help to consolidate the trial regarding Susan Szanto's claims against all of the within plaintiff's (who are defendants as to Susan Szanto's claims). Debtor's calls went to voice mail. Debtor stated that he was asking for a return phone call to discuss very important matters related directly to trial in the instant case. Debtor sought actually to speak with both counsel, because of the grave

importance of the matters herein. Since that call, now 15 days ago, neither counsel has called, nor even tried to call, debtor.

Between 5-22-19 and the time of the signing of this paper, debtor has received no e-mail communication from either counsel regarding the instant application.

Therefore, pursuant to rule **LBR 7007-1 (a)**, debtor has sought conferral so as to resolve the issues to be presented here, but has been unsuccessful in resolution of the dispute.

I certify under penalty of perjury under the laws of the United States, that the foregoing is true and correct. Signed at Irvine CA.

DATED June 7/2019   /S/ *Signed electronically* Peter Szanto

## 2. NOTICE PER LBR 9013-1(b)

**Notice!!!** If you oppose the proposed course of action or relief sought in this motion, you must file a written objection with the bankruptcy court no later than 14 days after the date listed in the certificate of service below. If you do not file an objection, the court may grant the motion without further notice or hearing. Your objection must set forth the specific grounds for objection and your relation to the case. The objection must be received by the clerk of court at ** 1050 SW 6th Ave – Room #700 Portland  OR 97204 ** by the deadline specified above or it may not be considered. You must also serve the objection on Peter Szanto at 11 Shore Pine, Newport Beach CA 92657 within that same time. If the court sets a hearing, you will receive a separate notice listing the hearing date, time, and other relevant information.

16-33185 /   16-3114         VENUE MOTION JUNE 7TH  - 2019 – p. 2

### 3. Notice

To the Court and plaintiffs, please take **notice**, comes now debtor seeking venue change for the convenience of the parties and the witnesses – the majority of whom are domiciled in the Central District of California.

### 4. Facts

Debtor has been weighing the benefits to both sides and the Court as to the change of venue issue. A multitude of facts, applied to law, clearly justify a change of venue. These will be discussed monetarily.

**However, as a matter of extreme timeliness debtor has learned for the 1st time today June 7, 2019 that:**

1) Kimberley Szanto (now Bell) attended the University of California at Irvine for at least 4 years from 2009-2013. The University of California at Irvine is less than 2 miles from Debtor's home. And Debtor is now commencing investigation as to the likelihood that pretending to be a student was merely a cover for plaintiff Kimberly conducting extensive clandestine surveillance and privacy invasion of Debtor and his family, business partners and Debtor's friends. Likewise, the other plaintiffs likely spent extensive amounts of time near Debtor's home conducting espionage, surveillance and identity theft activities under the guise of 'visiting' Kimberley.

   Indeed, this **latter** consideration extrapolates into the plaintiffs conducting activities – and by the shared surname – causing, instigating and bedeviling Debtor's business enterprises and business dealings – **THUS CREATING A CAUSE OF ACTION WHICH SOUNDS IN TORTIOUS INTERFERENCE WITH BUSINESS ADVANTAGE** – which Debtor will plead as a further

and new cause of action for which plaintiffs are the proximate cause and bear fault and liability.

**(NO aspect of limitations of actions is relevant based on the '<u>newly discovered</u>' rule which commenced only today.)**

2) Significantly, Debtor also learned for the first time today, June 7, 2019, the fact that during her tenure at the University of California, Kimberley Szanto was arrested on multiple occasions in Orange County, California (Irvine, California is in Orange County). (Due to various privacy rules at the California Superior Court in Orange County, Debtor has not yet been able to secure the records of Kimberley Szanto's multiple arrests.

3) During her tenure at the University of California Kimberley was also involved in various civil litigation (wholly unrelated to debtor) the nature of which is also currently being investigated.

### a. *1st Good Cause for Transfer: Debtor's Need for Additional Investigative Time in Place to Where Venue Must Proceed*

Activities which caused Kimberley Szanto's multiple arrests and civil litigation are as yet unknown. Debtor will commence immediate thorough investigation. However, what is already known is that the events occurred in the Central District of California and that at least one plaintiff is involved.

This is significant, because the balance of this request also focuses on changing venue in this matter to the Central District of California. A good and solid nexus of common facts and events exist for transfer. *In re Empire One Teleco., Inc. (2011)* 458 B.R. 692.

Of importance to the within venue change request, as regards Kimberley Szanto's multiple arrests and civil litigations, is that the arresting officers to the events

16-33185 / 16-3114          VENUE MOTION JUNE 7TH - 2019 – p. 4

and contra parties to the civil litigation will be persons recounting incidents which occurred in the Central District of California. These persons will be called to testify as to what Debtor anticipates will be immense evidence that Kimberley, her sister, her fiancé, her uncle and her parents conducted extensive improper surveillance of debtor, efforts to ruin Debtor's business dealings and to invade his privacy and personal life.

Debtor suggests that an ORDER for change of venue will allow him the requisite time (while records are transferred and the Central District judge schedules trial) to complete the investigation about Kimberley's arrests and other litigation.

### *b. Timeliness*

Only one of the many rules regarding venue change mentions timeliness.

That rule is subsidiary to the U.S. Code's statutes which never, not once, address timeliness (as is logical and just, because in litigation surprise events arise necessitating change of venue on the basis of newly discovered facts). However, here the request for venue change is nevertheless timely, because Debtor is seeking a change of venue on the same day on which he discovered Kimberley Szanto's multiple arrests which weigh heavily in the defense of this matter all having occurred in the Central District of California.

### 5. MEMORANDUM

### a. *2 Statutory Venue Rules*

The primary statute in the United States Code relating to changing venue is 28 USC §1404(a). This law is superior to mere rules and explicitly provides:

> **(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.**

For Title 11 Bankruptcy cases 28 USC §1412 states:

> **A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.**

Thus the focus is on 1) convenience, 2) the interests of justice.

### 1. Factors of Convenience

### A. Susan Szanto's Incapacity

As the Court knows well, Susan Szanto has been undergoing liver transplantation therapy for 6 months. Susan visits her doctor for care at least twice-a-week. Her trips to the hospital require interaction with surgeons and physicians familiar with her diagnoses and therapy.

Considering trial in Oregon: the matter would be a logistics nightmare. Susan is not well enough to travel by plane. Thus, the 1000 mile trip would have to be broken into short journeys between qualified medical facilities (from a preliminary review, this would mean short trips (approximately 200 miles travel per day) between hospitals. This would necessitate 5 days to Portland and 5 days to return; 10 days total. This is not to mean that Susan would have to stop at hospitals each of 10 days, but rather that there would be availability in case of any contingency / emergency.

On top of this, there would be the 3 or 4 days of trial – creating a total necessity of 14 days that Susan would have to be away from her regular surgeons and physicians.

As for Court appearance. Susan is anxious to attend every minute of the trial. This will necessitate the need for at least 1 nurse for the hours of the trial (a second nurse may be needed if the Court forces Susan to testify while she is convulsing or emptying her bladder. Also, during the course of the day, Susan tires and her condition sometimes deteriorates so as to necessitate her use of pure Oxygen or a respirator.

Prior to each day's trial, Debtor is certain that the United States Marshall's Office will have instructions from the Court to cause the disassembly of Susan's wheel-chair. This, of course, will necessitate Debtor engaging a person to re-assemble Susan's wheel-chair prior to trial. Debtor is still making inquiries for Oxygen supply and a mobile respirator which can clear the Court's x-ray machine.

In sum, the 14 days travel and the extra scrutiny of Susan's medical equipment create a situation of grave **inconvenience**, which can easily be avoided by a change of venue to a locale where Susan's **inconvenience** for her health care is minimized.

**As Mr. Henderson demonstrated by his obsessive desire to take Susan's deposition: Susan is a crucial witnesses in this action.** Mr. Henderson's cruel, and brutal multi-hearing and multi-day deposition of Susan demonstrates her importance as a witness in this action. Mr. Henderson should be feted by prevailing on the issue of purposefully causing Susan Szanto immense and intense **inconvenience** such that this Court might be deprived of Susan's testimony.[1]

Susan's testimony should not be compromised in this action because of the **inconvenience** of travel to Oregon and the hardship of securing health care there from physicians who are unfamiliar with Susan's idiosyncrasies and courses of therapy.

Susan's health should not be compromised because this Court refuses to see the necessity of conforming with the laws which require the convenience of the parties and witnesses to take precedence.

In his on-going efforts to be co-operative, Debtor exhausted all possible means of state or Federal assistance for the expenses outlined above and found that all of the enumerated expense will be expenses straight out of his pocket.

- - - - - - - - - - - - - - - ---------------------------
1) **No doubt the Court will recall that it has once before very intentionally and savagely punished Susan for being ill, by failing to postpone her claim hearing. The Court disabling its call-in system was also shocking.**

16-33185 / 16-3114     VENUE MOTION JUNE 7TH - 2019 – p. 7

Case 16-03114-pcm    Doc 446    Filed 06/07/19

The estimated expense of the many factors to bring Susan Szanto to the within trial in Portland is estimated to be $9000-$11000. This anticipates 4 comprehensive doctors' visits during the trip, as well as oxygen service, but does not allocate any resources to emergency health care should something go wrong and necessitate a prolonged hospital stay away from Susan's home

On the other side of <u>greater convenience</u> for Susan Szanto and Debtor's meager pocketbook, is the transfer of venue to the Central District of California: 1) there would be no additional medical expenses (since Susan would be seeing her local physicians), 2) Susan's health would **not** be compromised by an arduous trip, 3) health convenience would be maintained by close proximity to Susan's own health care team, 4) there would be no **inconvenience** of dismantling Susan's wheelchair, since she frequently passes through security at the Central District Courthouse on the way to use the law library; she is well known to the U.S. Marshalls at that facility as non-dangerous.

### B. <u>Debtor Securing Counsel</u>

The Court is well aware of Debtor's need for counsel in presenting his defense of this case. **(Indeed, the Court is well aware that its own obstruction of Debtor having counsel was the single reason that it was able to rule in defiance of law!!!)**

Debtor's efforts at securing Portland counsel are also well known to this Court. Debtor's efforts to secure Portland counsel have been absolutely impossible. Whether Debtor's inability to secure counsel arises from Mr. Henderson 'putting out the word' that representing debtor is career suicide – or that Portland counsel are terrified that some latter-day event in Judge McKittrick's courtroom might be decided against them upon intentional retribution (or demeanor) for representing Debtor is not the entire point.

The true issue is Debtor's **inconvenience** in attempting to secure Portland counsel on a limited budget. In the Central District of California wherein Debtor resides and has attorney relationships which extend back 25-years – Debtor would be readily able to find counsel to assist and represent him not on any retainer basis, but rather on

a contingency fee basis based in anticipation of the **TORTIOUS INTERFERENCE WITH BUSINESS ADVANTAGE** action Debtor will soon bring against the plaintiffs herein.[2]

In any event, Debtor's **convenience** would be well served in the Central District where he would be afforded the necessary assistance of counsel.

### C. Convenience of the District Court

The Central District of California Judge has already heard 8 various hearings in this matter. He has good familiarity with the matter and the parties.

It would be a convenience to the District court judge to hear the matter in the Central District where this matter began in September 2017.

Additionally, contrary to Judge McKittrick's reliance and absolute belief in everything Mr. Henderson pontificates, the District Court judge in California has already taken exception to Mr. Henderson attempting to offer his own testimony in this case.

### D. Convenience of the Plaintiffs

Mr. Henderson and the plaintiffs selected the Central District of California, with the stated reason: "of taking Susan Szanto's deposition." However, based on the geography of Susan Szanto's residence she is also within 100 miles (per FRCP 30) of the jurisdictions of both the Eastern and Southern Districts of California; as well as the Central District of California's Los Angeles Courthouse. **Thus, plaintiffs affirmatively selected the Central District to which defendant now seeks transfer of venue**.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

*2. Even though Debtor only discovered the grounds for his newly discovered counterclaim today; he has already had discussions with Orange County counsel as to the cause of action that is now ripe for amendment to this case.*

16-33185 / 16-3114      VENUE MOTION JUNE 7ature - 2019 – p. 9

### E. Convenience of Debtor's Witnesses

All of Debtor's witnesses agree that travel to Orange County is far easier and much more convenient than Portland. For example, Orange County's premier attraction is Disneyland. This creates immense availability of affordable air-flights to Orange County. In comparison of the various locales where plaintiff's witnesses reside between travel to Portland with travel to Orange County, travel to Orange County is always (between 45% to 70%) less expensive. The convenience of the plaintiff's witnesses would thus be enhanced. As a matter of fact there is non-stop air service from Lake Tahoe (just a few miles from Victor Szanto's residence to Long Beach that costs only $94 roundtrip).

### 2. Factors in the Interests of Justice: Need for Counsel

As stated in both 28 USC §§ 1404 and 1412, the focus of venue change is on 1) convenience, 2) the interests of justice.

Debtor addressed his need for counsel as a matter of convenience. Related thereto is also the issue of the interests of justice mandating a litigant's ability to secure counsel.

Here, the most significant factor in the pursuit of fairness and the interests of justice have to do with Debtor securing counsel.

Debtor realizes that here is no constitutional right to counsel in a legal proceeding that is civil in nature such as the instant Bankruptcy.

However, Debtor contends there are at least three other aspects of foundational and fundamental fairness which **have grievously failed in Judge McKittrick's Court**.

First, Debtor has on multiple occasions been denied a stay to find counsel to obtain assistance thereof. Debtor was not asking for any appointment of counsel or some other Court assistance. Indeed, changed circumstances are a usual dimension of

the process of all litigation: as this proceeding has progressed, surprise events have arisen which must be taken into consideration. And alteration of litigation strategy is the general rule rather than the exception during litigation.

This was the entire of debtor's contention: "I erred by thinking I could handle this case on my own – and now need help. Please allow me additional time to obtain the assistance I need." The key factor, of course, being this Court's immense favoritism and solicitude towards Mr. Henderson.

Viewed objectively, Mr. Henderson's control of the Judge McKittrick is not merely shocking, **it is obscene!!!!! Debtor has never before seen an attorney being given such freedom to testify, prevaricate and fabricate evidence without even the slightest objection from the Court.**

Indeed, debtor believes that had he been an attorney who faced challenging predicaments, the Bankruptcy court would have readily agreed to a 60 — 90 day stay.

There has never been any immediate urgency in this case which needed resolution for which proceedings could not have been stayed.

Indeed, the Court will hopefully recall the four times Mr. Henderson has secured extensions based solely on the notion his clients needed extra quiet time and vacations.

Therefore, Debtor contends that the basis for venue change is justified by the **interests of justice necessitating** alteration of the Bankruptcy court's failure to allow Debtor to secure counsel which sounds in a **denial of equal protection of the laws as guaranteed by the** *U.S. Constitution*.

Specifically, the **disparity of treatment** which has occurred is that because Debtor is not an attorney, he was not privileged to enjoy the extensions of time which attorneys regularly enjoy when they have conflicts or cases which protract in difficulty or where they find themselves overmatched or underpaid. (Like Mr. Henderson, multiple times in this case, with just a nod and a wink to Judge McKittrick.)

16-33185 /   16-3114                    VENUE MOTION JUNE 7TH - 2019 – p. 11

For example, the best analogy would be a novice attorney in Bankruptcy court seeking out a veteran litigator; client and novice meeting with seasoned counsel; preparations and review (as in this case which had gone for 32 months) and then strategy and development of a new methodology of attack would easily take at least 60 - 90 days.

Here, however, Judge McKittrick created an **improper classification** between all other attorneys and non-attorney Debtor. Debtor specifically <u>**did not have the same rights to secure the benefit of a delay in proceeding as all attorneys appearing before Judge McKittrick**</u> (this disparity of treatment plugs in very well and readily explains Judge McKittrick's unremitting belief in all attorneys as people who always tell all of the truth all of the time). Apparently Judge McKittrick believes attorneys to be a revered class in American society who are entitled to special privileges, the benefits of non-existent law and the immense and complete grace of Judge McKittrick in the continuing extermination and complete annihilation of Peter Szanto.

Judge McKittrick's improper classification – between sainted attorneys and rightless *pro se* Debtor immediately runs afoul of the Equal Protection Clause because there is absolutely no rational relationship between the **disparity of treatment** (more time for one group (attorneys) and no extension for another (*pro se* debtors)) and some legitimate governmental purpose. *Nordlinger v. Hahn,* (1992) 505 U.S. 1 accord *New Orleans v. Dukes,* (1976) 427 U.S. 297, 303.

Second, Debtor is not a retard and is a businessman with 60 years experience who knows when people are being dishonest with him. In Debtor's efforts to secure counsel, he quickly realized that **"the word was out"** about him and this case. And that the motivations of counsel denying him representation came either directly from the Bankruptcy court or the U.S. Trustee or other counsel involved in this action setting forth a warning of very likely retribution for assisting Debtor. Debtor does not believe that it was any coincidence of failure to assist him that not even one of 27 solicited counsel showed any willingness to take this case for money.

Third, a *Constitutionally* barred denial of due process occurred when the Bankruptcy court required Debtor to go forward with the motion for summary judgment without counsel (**but Debtor begging and pleading for leave to secure counsel**), in so doing, the Bankruptcy court **intentionally, purposefully and affirmatively** prevented Debtor from obtaining and utilizing counsel of his choice. *Powell v. Alabama*, (1932) 287 U.S. 45 accord *United States v. Dinitz* (1976) 538 F.2d 1214.

Specifically explained in *Powell* at pages 68-69:

> **The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. . . . . . . . He is unfamiliar with the rules of evidence. . . . . . He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not (culpable), he faces the danger of (defeat) because he does not know how to establish his (explanations). If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense**.

And this is precisely what has happened to Debtor whereby he was denied due process of law, because he had no counsel properly to defend the improper, phony, perjured and contrived allegations and hearsay testimony of Mr. Henderson which were directed at Debtor and Debtor's evidence.

Indeed, when Szanto has complained a thousand times that Mr. Henderson is testifying, Judge McKittrick shrugs his shoulders and says "so what, your demeanor is no good, and anybody can say anything they want and I will believe them--- because on every occasion, I will decide against Szanto, irrespective of truth, justice or law."

**Venue should therefore be changed so that Debtor is afforded ability to retain counsel in a forum where Debtor has contacts with counsel upon whom he can rely and who can present his well crafted defense against what is nothing else but the perjured testimony of counsel Henderson.**

16-33185 /   16-3114 VENUE MOTION JUNE 7TH - 2019 – p. 13

Case 16-03114-pcm    Doc 446    Filed 06/07/19

Thus the various *Constitutional* depravations which have already impermissibly befallen Debtor can begin to be remedied by venue change so that Debtor is afforded the ability to secure counsel in the Central District of California.

### 3. Venue Change Allowed on Independent Factors

Debtor has addressed the 28 USC §§ 1404 and 1412 focus of venue change which is on 1) convenience, 2) the interests of justice.

The "interest of justice" and "convenience of the parties" standards are disjunctive and separate, and transfer is appropriate even if only one is met. Also, an important difference relevant to the "interest of justice" analysis is that the interests of the bankruptcy estate, as opposed to the other litigants' interest, are paramount. *KFC Corp. v. Wagstaff* (2013) 502 B.R. 484.

For this reason, Debtor's application here, requires only that Court accept one of the requirements of either the need for the convenience of the parties or witnesses OR the necessity for greater fairness and justice than afforded by the Oregon court – not both.

### 4. Timeliness

The statutory laws, 28 USC §§ 1404 and 1412, are superior in command to the rules. FRBP 1014, but no local rule, addresses the change of venue in the same manner as Title 28 statutory law: mandating transfer whenever "the transfer is in the interest of justice or for the convenience of the parties."

The timeliness provision of FRBP is satisfied here by the fact that Debtor is presenting his venue change application on the same day he has uncovered evidence of Kimberley Szanto's arrests, likely in pursuit of stalking Debtor and his family.

### 5. Presentation of Evidence

The evidence regarding Kimberley Szanto's multiple arrests and other civil litigation has only today reached Debtor. Debtor is evaluating said materials and preparing to obtain certified copies thereof.

### 6. Declaration of Peter Szanto

1. My name is Peter Szanto and this is my truthful declaration.
2. All of the statements made in this application are true of my own personal knowledge or are based on sources and evidence which I believe to be true.
3. **I cannot emphasize strongly enough my absolute belief that Judge McKitrick harbors irrational hatred and animosity towards me**.
4. Judge McKittrick has emphasized that irrational hatred hundreds of times by emphasizing that these proceedings are based entirely on his disdain for my demeanor – my appearance.
5. Apparently Judge McKittrick misreads the demeanor of Mr. Henderson who was belly-laughing when Judge McKittrick disallowed my request to examine the "boxes boxes and boxes" of evidence in plaintiffs' possession based solely on Mr. Henderson's personal testimony that those were unimportant.
6. Mr. Henderson had another belly laugh when he was able to bamboozle Judge McKittrick into believing that there was significant "meta-data" available from Debtor which would assist him.
7. Mr. Henderson had a side-splitting belly laugh when Judge McKittrick quashed my discovery based on phony testimony from Henderson that there were only 29 days given before the close of discovery.
8. Another laugh from Henderson came when Judge McKittrick, without any request from Henderson, asked if Henderson wanted more time to accomplish gutter service on Susan Szanto.

16-33185 / 16-3114  VENUE MOTION JUNE 7TH - 2019 – p. 15

9. My absolute belief is that Judge McKittrick wishes personally to adjudicate this case so as to cover-up all the brazen unfairness and injustice which he has afflicted upon me.
10. Continuation of this matter in Portland would be unnecessarily expensive for me and highly inconvenient.
11. This is because it would cost me money which I do not have.
12. Likewise, I am certain that the stress placed on Susan Szanto would be of such intensity that she would die.
13. Ultimately, Judge McKittrick has abandoned all pretext of adjudicating this matter fairly and is focused solely on further and additional unfair and improper punishment upon me in contravention of all laws.
14. These factors of lack of fairness – which eliminates all guarantees of law in this case – and the highly inconvenient aspect of the Portland forum mandate a change of venue.
15. Orange County attorneys with whom I have worked before are anxious to step into this case so long as they are able to proceed in a District Court which seeks fairness and equality before the law, rather than personal judicial glory.

16. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed at Irvine California.


DATED <u>7 June 2019</u> /s/ *signed electronically* Peter Szanto


### 6. Declaration of Susan Szanto

1. My name is Susan Szanto and this is my truthful declaration.
2. All of the statements made in this application regarding my health and medical needs are true.

3. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed at Irvine California.

DATED 7 June 2019 /s/*signed electronically* Susan Szanto

### 7. Conclusion

The focus of the venue laws and rules is convenience and justice. Here, the continuation of trial before Judge McKittrick will be neither fair nor just, because Judge McKittrick has already undertaken hundreds of actions to Debtor's detriment solely because of his intense personal hatred of Debtor.

Regardless of Judge McKittrick's intense rage against Debtor, the convenience of the parties and the witnesses will likewise not be fulfilled in Portland, because none of the parties reside in Oregon AND because all of Debtor's witnesses will likewise be persons who do not reside in Oregon.

Debtor contends that by Victor Szanto's pistol whipping of Susan Szanto in Orange County and Mr. Henderson's subsequent gutter service and pure harassment deposition in Orange County, plaintiffs have already consented to proceeding in California's Central District by having already pursued this litigation there.

Upon that dual basis, venue transfer is necessary and is justified.

DATED 7 June 2019 /s/*signed electronically* Peter Szanto

16-33185 / 16-3114       VENUE MOTION JUNE 7TH - 2019 – p. 17

# **PROOF OF SERVICE**

My name is Maquisha Reynolds, I am over 21 years of age and not a party to the within action. My business address is PO Box 14894, Irvine CA 92623

On the date indicated below, I personally served the within: **Motion** on the following by placing the within document in postage pre-paid envelope addressed as:

> **Nicholas J. Henderson**
> **Troy G. Sexton**
> care of
> Motschenbacher & Blattner, LLP
> 117 SW Taylor St., Suite 300
> Portland, OR 97204

and by mailing copies to the above parties *via* 1st class mail, postage prepaid.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed at Lido CA.

<u>7 June 2019</u> /s/*signed electronically* M. Reynolds